BOLIN, Judge.
Eugene Woods and William H. Turbe-ville owned and maintained their residences *916 on adjoining lots in Dixie Gardens Subdivision, outside the corporate limits of Shreveport, Louisiana. Woods seeks to enjoin Turbeville from continuing the practice of boarding a large number of horses on his property, in such close proximity to plaintiff’s dwelling, contending the foul odors emanating from the horses, stables and grounds constitutes a nuisance. Additionally, plaintiff asks that defendant be ordered to cease and desist from further changing the natural drainage by spreading river sand on his property, thereby raising the ground-level causing an unusual amount of water, sand and excrement to wash from defendant’s property onto that of Woods. A third complaint, that a fence dividing their properties encroached on plaintiff’s lots, has been abandoned. For reasons orally assigned the trial judge rejected plaintiff’s demands and from such judgment this appeal was taken.
Subsequent to trial on the merits, but prior to the signing of a formal judgment, plaintiff died and his heirs have been substituted as parties plaintiff, but for sake of brevity plaintiff will continue to be referred to in the singular.
Appellant, in his brief before this court, assigns as error the trial judge’s holding that plaintiff had not sustained the burden of proof. The trial lasted several days and approximately thirty-eight witnesses testified in open court. We have made a painstaking review of this testimony and have concluded the district judge was correct in finding plaintiff had not borne the burden of proof.
We first direct our attention to the question we consider to be the primary matter under consideration, and that is whether the keeping of the horses constitutes a nuisance so as to entitle plaintiff to injunctive relief.
It is conceded there were no local ordinances or zoning regulations affecting the use of the property in question. Therefore, the following articles of the LSA-Civil Code are pertinent:
Art. 666:
“The law imposes upon the proprietors various obligations toward one another, independent of all agreements; and those are the obligations which are prescribed in the following articles.”
Art. 667:
“Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.”
Art. 668:
“Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
“Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors’s [neighbor’s] house, because this act occasions only an inconvenience, but not a real damage.”
Art. 669:
“If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.”
The law of nuisance of Louisiana, in accord with the general rule throughout the United States, is based on common sense and reason. So long as a person does not violate any statute he has a right to use his property as he sees fit limited only by the *917 prohibition against abuse of the privilege by undue interference with the rights of his neighbor. Operation of a lawful business cannot be enjoined, under the guise of being a nuisance, unless the business is being operated in such a way as to give serious and material discomfort and inconvenience to those who are living in close proximity thereto. See Galouye v. A. R. Blossman, Inc. (La.App. 1 Cir., 1947) 32 So.2d 90 (cert. denied).
In order to constitute a nuisance the use of the property must be of such character and to such an unreasonable degree as to produce actual discomfort and annoyance to the ordinary sensibilities of a normal person. The following language from Hobson et ux. v. Walker (La.App. 2 Cir., 1949) 41 So.2d 789, is also appropriate:
“The use of injunctive process which interferes with, restricts or restrains the exercise of the rights of those engaged in trade, business or commerce is one which has been carefully safeguarded and one which is not used except in those cases where the established facts are clear and convincing.
******
“The general principles which have been enunciated by our courts, with reference to the abatement of a nuisance, take into consideration the locality, the reasonableness vel non of the business, the question of a serious and material discomfort to persons of ordinary sensibilities and in a normal state of health.”
Defendant operates his business of boarding horses on the acre and one-half of land owned by him in Dixie Gardens and on several adjoining acres, the use of which is allowed him by his neighbors. The number of horses he boards varies, but we find from the testimony six to nine horses are kept in close proximity to plaintiff’s residence. Plaintiff contends the foul odors of the horses, manure and urine emanating from the lot adjoining his constitutes a nuisance. Defendant, on the other hand, contends the horses and stables are kept clean and sanitary. While testimony on this issue was somewhat conflicting, we find plaintiff not only failed to prove the alleged nuisance, but the evidence is strong and convincing that defendant’s stables are kept in an extraordinarily clean and sanitary condition. It should be noted one of the motivating reasons for people residing in the Dixie Gardens Subdivision is that they are allowed to keep horses on their property.
In the final analysis the question of whether defendant is maintaining a nuisance is purely factual. We think the trial judge was justified in concluding this factual issue adversely to plaintiff.
We pass now to the question of whether Turbeville has deposited enough river sand on his land to cause diversion of the natural drainage and thus cause damage to plaintiff’s property. We are convinced the natural drainage passing from defendant’s land onto that of plaintiff was not materially increased by the river sand placed on the horse lots. The testimony of the surveyor, Willcerson, reveals a small ditch extended along the north line of defendant’s property to divert the flow of water or waste which otherwise might pass onto plaintiff’s land. There was testimony plaintiff had removed boards from the lower part of the fence, placed there by defendant to take care of drainage from his property, and had refused to cooperate in placing a small levee between the properties. We find the evidence fails to support this portion of plaintiff’s demands which was also correctly rejected for his failure to bear the burden of proof.
For the reasons assigned the judgment appealed from is affirmed at appellant’s costs.
Affirmed.