I,STEWART, J.
This is an inverse condemnation action by Lodestro Company for damages allegedly sustained as a result of Streetscape, a project to revitalize and renovate the streets and infrastructure of downtown Shreveport. Lodestro Company appeals the denial of its claim for damages against the City of Shreveport (hereinafter the “city”). We affirm.
FACTS
Lodestro Company was a men’s clothing store owned by Joseph D. Lodestro and Sally Crocker Lodestro at 421 Texas Street in downtown Shreveport. Lodestro Company was in operation from 1979 until December 31, 1993, when it closed its doors after a liquidation sale of its inventory. The Lodestros and Lodestro Company filed suit against the city and Roxco, Ltd., (“Roxco”), a construction corporation hired by the city to perform the Texas Street portion of Streetscape, alleging that the construction activities and various obstructions encountered along Texas Street and in front of the store made it virtually impossible for customers to gain access to the store. Lodestro Company alleged that it had a special right of easement to the portion of Texas Street fronting the store and that the city, through Streetscape, expropriated its property right without payment of due compensation.
Streetscape began with a Notice to Proceed on September 28, 1992 and continued into late 1994. The city contracted with Roxco for performance of the Texas Street portion of the project at a cost of $4,330,-675. Work to be performed by Roxco included the installation of new water, sewerage and drainage facilities, the widening of the sidewalks, and the addition of new paving on the street and sidewalks. Other improvements under Streetscape included new street lamp posts, parking meters, mast arms for the traffic signals, new fiber optic cables, and the addition of trees and artwork for the beautification of the downtown area. The cost |aof Streetscape was funded by a bond issue approved by voters in Shreveport. On behalf of the city, Mark Jusselin, a civil engineer with NTB, Inc., served as a link to the businesses and property owners downtown. Jusselin observed the progress of the project on a daily basis, addressed complaints and concerns by the businesses affected by the project, and provided information on the progress of the project.
*726 Roxco began its work on the 400 block of Texas Street in October 1992 by removing the old pavement on the street and digging a trench along the street in preparation for the installation of a storm drainage system. The construction area included the parking lane on the south side of Texas Street to the existing south curb and gutter. Because of this work, Lodes-tro Company’s customers were no longer able to drive directly up to the entrance of the store. However, the entrance remained accessible along the twelve foot wide sidewalk and could be reached by walking from either end of the 400 block. Lodestro Company made requests for a walkway over the construction area between the street and sidewalk for direct access to the entrance from Texas Street, but the city denied the requests in written responses on November 4, 1992 and March 25, 1993 on the basis that a walkway from the street would pose a safety hazard. The city explained that a walkway, other than those provided at the intersections of the block, would pose a safety concern to pedestrians who might try to cross between the intersections and would encourage motorists to stop and block the lanes of travel along Texas Street. In August 1993, after completing the installation of the storm drainage system and in order to begin the sidewalk reconstruction, Roxco removed a portion of the sidewalk leaving only a four foot sidewalk with a wooden handrail and placed concrete barriers delineating the construction area from pedestrian traffic. The city then authorized a walkway from Texas Street to the sidewalk in front of Lodestro Company. Similar walkwajrs were also provided for other businesses in the ^construction area. Roxco’s work area at this time was confined between the curb and the buildings along Texas Street.
In addition to the lack of direct access to Lodestro Company from Texas Street due to the ongoing construction, Lodestro Company also encountered other obstructions at various times including the placement of heavy equipment, piles of sand, and construction barrels in the front of the store. Mud on the sidewalk was also an inconvenience encountered by customers and employees. The work along the 400 block of Texas Street was delayed due to the presence of unclassified material in the ground, such as trash and foreign matter that could not be compacted, old utility lines, and the discovery that the basement of the building adjacent to Lodestro Company extended to the curb of the street. Despite the unexpected delays, the project was completed ahead of schedule.
Prior to trial the claims of Joseph and Sally Lodestro were dismissed pursuant to exceptions of no right of action filed by the city and Roxco. A jury denied the claims of Lodestro Company against Roxco upon finding no damage suffered by Lodestro Company which was peculiar to it and not damage sustained by other similarly situated store owners. The jury also found no excessive or abusive conduct by Roxco. On the basis of the evidence presented at the jury trial, the trial court ruled in favor of the city upon finding that Lodestro Company failed to prove by a preponderance of the evidence that Streetscape was the cause of its business losses. Lodestro Company appeals only the denial of its claim against the city.
DISCUSSION
An inverse condemnation action is one by which a property owner may seek redress when his property is taken or damaged in the absence of an expropriation action. Constance v. State Through Dept. of Transportation and Development, Office of Highways, 626 So.2d 1151 (La.1993), certiorari denied, 512 U.S. 1219, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994). If any taking or Rdamaging has occurred, the expropriating entity is bound to make reparations in accordance with La. Const. Art. 1, Sec. 4. State, Through Dept. of Transp. and Development v. Chambers Investment Company, Inc., 595 So.2d 598 (La.1992). A three-pronged analysis was adopted by *727 the Chambers court for determining whether a claimant is entitled to eminent domain compensation even where a taking without expropriation is alleged to have occurred. This analysis requires that we determine:
(1) whether a person’s legal right with respect to a thing or object has been affected;
(2) whether the property has been taken or damaged in a constitutional sense; and
(3) whether the taking or damaging was for a public purpose.
Chambers, 595 So.2d at 603.
For purposes of our analysis we will concede that the first and third criteria are satisfied in this instance. However, our review of the record does not convince us that Lodestro Company has succeeded in proving that a taking or damaging of property for purposes of eminent domain compensation occurred. The determination of whether a claimant’s right was taken or damaged requires that we consider the respective rights of neighboring landowners as set forth in La. C.C. arts. 667 and 668.[1] While Article 667 limits a landowner from exercising his rights in such a way as to cause damage to his neighbors, Article 668 provides that a landowner must tolerate certain inconveniences which result from a neighbor’s lawful use of his own property. Consequently, it must be determined whether | ¡¡activities of a public entity resulted in inconveniences that must be tolerated under Article 668 or resulted in the type of interference that may be suppressed under Article 667. Chambers, 595 So.2d at 604. A finding of liability under Article 667 requires either proof of personal injury or physical damage to property or proof of the presence of some type of excessive or abusive conduct. Constance, 626 So.2d at 1157; Chambers, 595 So.2d at 605. Damage that is not peculiar to the property at issue but is the type of general damage sustained by other similarly situated property owners is not compensable. Reymond v. State, Through Dept. of Highways, 255 La. 425, 231 So.2d 375 (1970); Taylor v. State Through Dept. of Transportation and Development, 95-1318 (La.App. 3d Cir.3/6/96), 670 So.2d 699; Harrington v. Southwestern Electric Power Company, 567 So.2d 731 (La.App. 2d Cir.1990).
In this instance, there is no evidence of personal injury or physical damage to property. Lodestro Company contends that the city “sealed off’ its doors thereby preventing retail customers from entering the store and that the city’s actions resulted in the type of damage com-pensable under La. Const. Art. 1, Sec. 4. This contention is overstated in light of the testimony at trial which shows Lodestro Company’s main complaint to be that, during the course of the work along the 400 block of Texas Street, customers could no longer drive up to the front entrance of the store to pick up packages or to be dropped off for shopping. Instead, customers had to first park in the downtown area where parking was generally available in a garage approximately two blocks away and walk to either intersection on the 400 block of Texas Street to reach Lodestro Company by way of the sidewalk. Customers of Lodestro Company testified about the difficulties of getting to the store during Streetscape. However, their testimony indicated that access, though inconvenient, was possible. Lodestro Company remained open for business six days a week *728 throughout the course of the project until its closure after | ^liquidation on December 31, 1993. Furthermore, access was always available along the sidewalk fronting Lodestro Company, and a walkway from Texas Street was authorized by the city and provided in August 1993 when work on the sidewalk required the width of the twelve foot sidewalk to be reduced to four feet. Similar walkways were also provided for other businesses along the 400 block of Texas Street. The significant number of customers who attended the start of the liquidation sale in October 1993 attests to the fact that access was available.
From our review of the record we find the inconvenience experienced by Lodestro Company, including the lack of access from the street, the barricades, the ditch, the equipment and supplies placed at times in the work area in front of the store, to be typical of the inconveniences encountered during construction projects or public improvements and to be the type of general damage sustained by other similarly situated businesses or property in the construction area as shown by the pictures submitted into evidence. Other businesses in the vicinity of Lodestro Company remained open during the construction project even while experiencing the same access problems and inconveniences as Lodestro Company. While Lodestro Company blames its closure on the loss of business resulting from Streetscape, evidence shows a decline in sales, inventory purchases, and gross profit beginning in the late 1980’s. Furthermore, the evidence shows that even though Streetscape continued for an extended period of time, Joseph Lodestro began considering closure of Lodestro Company as early as March of 1993 and decided to proceed with liquidation in July 1993. Citing Reymond, supra, the Constance court explained that damages such as traffic noise and circuitous or less convenient routes, as well as damages that result in “discomfort, disturbance, inconvenience, and even sometimes financial loss as an ordinary and general consequence of public improvements are not compensable....” Constance, 626 So.2d at 1156. These are precisely the damages alleged in this instance, and these |7are the type of general damages that affected all of downtown, particularly those businesses located on the 400 block of Texas Street, during Streetscape. Though for reasons other than those expressed by the trial court, we affirm the trial court’s judgment denying the claim of Lodestro Company against the City of Shreveport.
CONCLUSION
For the aforementioned reasons, we affirm the trial court’s judgment at appellant’s cost.
AFFIRMED.

. La. C.C. art. 667 states, in part:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
La. C.C. art. 668 states, in part:
Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although i.t should occasion some inconvenience to his neighbor.