CARAWAY, J.
 

 hThe plaintiff owns a 10-acre rural tract of land completely surrounded by the property of defendant. When the defendant erected an 8-foot fence surrounding plaintiffs property, plaintiff instituted suit seeking to have the fence declared a nuisance and requiring its removal. The trial judge ruled in favor of plaintiff on the issue of nuisance and ordered the fence removed. This appeal by defendant ensued. For the following reasons, we reverse the trial court’s finding of nuisance. Nevertheless, we remand the case since the trial court’s ruling did not completely adjudicate the landowners’ boundary and access issues also raised by the evidence.
 

 Facts
 

 In 2002, Robert Michael Atkins (“Atkins”) purchased an approximately 10-acre rural tract of land in Winn Parish, described as the South Half of the North Half of the Northwest Quarter of the Northwest Quarter of Section 11, Township 11 North, Range 1 West. The land not only had sentimental value to Atkins as family property, but also served as a recreational tract for deer and wild hog hunting. All of the property surrounding Atkins’ tract of land is owned by Six C Properties, L.L.C. (“Six C”), which owned between 30,000 and 40,000 acres of land. Atkins had access to his property by a private road owned by Six C located on Six C property near the eastern end of the Atkins property.
 

 Approximately four years after Atkins purchased the tract, Six C erected an 8-foot fence to surround 27,000 acres of its land including the Atkins tract. The fence completely surrounded the entirety of Atkins’ property, but had two gates on the eastern side of Atkins’ 12property along the road. When conflict over this fence arose, Atkins obtained the following survey:
 

 
 *123
 
 [[Image here]]
 

 The survey indicated that the Six C fence encroached on a portion of the eastern side of the Atkins tract. The survey also reflected that the access road was located a short distance from the western boundary of Atkins’ tract and thus required Atkins to traverse Six C property in order to gain access to the road. On August 2, 2007, Atkins instituted a petition for possession, damages, treble damages, termination of nuisance and trespass. Atkins prayed for judgment recognizing his right to possess that portion of the tract Isover which the fence allegedly encroached and damages for removal of trees thereon by Six C, alleging that “he and his ancestors in title have had possession of the immovable property in question for more than thirty (30) years.” Six C filed a reconventional demand seeking the fair market value of trees removed, cut, destroyed or damaged “on the property of the Answering Defendant” or from that portion of its property between the Atkins tract and the road, treble damages under La. R.S. 3:4278.1 and attorney’s fees.
 

 Prior to trial, the parties stipulated to Atkins’ ownership of the tract, Six C’s ownership of the entirety of the property surrounding the tract and that Atkins’ tract was surrounded completely by the 8-foot fence with a gate at the front of the
 
 *124
 
 property. At trial, Atkins’ surveyor testified to the correctness of the survey. He testified that part of the Six C fence encroached on the Atkins tract.
 

 Atkins testified that he purchased the tract in 2002 because he wanted to keep it in his family and for hunting because it was a “hot spot” for deer. Atkins’ grandfather bought the tract in the forties or fifties and it had sentimental value to Atkins. Atkins had spent some of his childhood on the tract with his uncle and had visited the property on an annual basis. Atkins testified that the hunting was good on the property because it was an old ridge, and there was a good food source for the deer. He stated, however, that the property lost its hunting value since the erection of the fence because of the lack of access by the deer to the property. According to Atkins, there’s “no hunting to it.” The deer enter the tract through the gates, |4which were “half the time” closed but could not figure out how to get out through the gates. Atkins identified two photographs which depicted dead deer which had been trapped inside his property and killed by coyotes. Atkins stated that it would be impossible to hunt deer with dogs on the 10-acre tract.
 

 Atkins also testified that the fence forced him to travel thirteen miles to get to his property on the west side instead of two-and-one-half miles from the east. He claimed that this was because the “main outside” fence “cut me off from the old ridge road that I used to go to the property on.” Atkins testified that he only learned of the fence after its construction.
 

 Atkins testified that when he was a teenager he had a conversation with his uncle regarding the “rear” boundary of the tract of land. He recalled that his uncle told him that a timber company began cutting trees “off the back and moved the line to the front.” Atkins testified that his survey moved the eastern boundary back to “where it was when [he was] a kid,” but that for fifty years the property line for this piece of property was basically where the fence was placed by Six C.
 

 An expert forester, Mike Albritton, testified for Atkins regarding the market value of the timber on Atkins’ lot. In his opinion, Albritton estimated that the value of the timber removed from one-quarter acres of Atkins’ land was $500.00.
 

 Steve Gleason, a forester for Six C, was called to testify by both parties. Gleason testified that no survey of the property was done before Six C erected the fence and that the best use of the Six C property was for | r,forestry. Gleason testified that the Six C property had been used by timber leasing companies over the years and that the property had been used for timber production in excess of forty or fifty years. Gleason testified that part of his duties as forester was consideration of wildlife on the property. Gleason stated that hogs had damaged Six C’s property. Gleason also testified that the fence was put up due to liability concerns, trespass and timber management. Gleason knew of many occasions of trespass on the property which raised fire concerns. Gleason agreed that the fence around the Atkins property made it virtually useless for deer hunting. He also admitted that he would not lease the property for deer hunting. Gleason estimated that the value of the fifty stumps removed by Atkins from the front of his property that belonged to Six C was in the $500.00 range.
 

 Finally, Terry Carr, who worked for one of the Six C owners, testified that he managed the wildlife on Six C’s property and took care of the roads. Carr discussed a “game pen” covering 1200 acres of Six C’s property for which Six C has obtained a deer farm permit. The 1200 acres did not involve the area around the Atkins proper
 
 *125
 
 ty. Carr testified that Six C obtained a permit for the deer with the Louisiana Wildlife and Fisheries Commission which inspects the operations. The Louisiana Department of Agriculture issued the permits for the fencing of the 1200 acres.
 

 After hearing all of the testimony and considering the evidence presented by both sides, the trial court adopted the survey submitted by Atkins and ruled that Six C’s fence encroached on the eastern side of Atkins’ property and disturbed his possession of the land. The judgment [ firecognized Atkins’ right to continued possession of the eastern end of the tract and ordered Six C to assert any adverse claim of ownership by filing a petitory action within 60 days of judgment. Atkins was awarded $500.00 in damages for Six C’s removal of timber from the western end of Atkins’ property. The court awarded Six C $500.00 in damages against Atkins for trees removed from that portion of its property near the access road on the west. The court denied Six C’s treble damage claim. Six C appealed only that portion of the judgment which declared the fence a continuing nuisance and ordered its removal.
 

 Relevant to the nuisance claim, the trial court judgment provides as follows:
 

 The fence erected by Six C Properties, L.L.C., is a continuing nuisance, [under La. C.C. art. 667] and Six C Properties, L.L.C., shall remove said fence from around the property of Mr. Atkins within sixty (60) days of this Judgment becoming executory.
 

 In oral reasons, the court stated as follows:
 

 Now, the only other issue in this case is whether or not the erection of this fence is legal under ... Civil Code Articles 667 and following. It’s a basic rule of law in this state that a land owner can do as he wishes with his property so long as it doesn’t cause damage to his neighbor. This is a fact specific ruling I’m making on the circumstances that exists here in this case. This is a land lock piece of land that has been fenced up by the owner of the adjacent property.
 

 ⅜ * *
 

 I believe the sole only reason that this fence was put up was to prevent Mr. Atkins from being able to hunt any more and that’s what I believe. I believe that to be a fact and in light of that and in light of the circumstances here, I am going to declare that the fence is a continuing nuisance and I’m gonna order the removal of that fence from around the property of Mr. Atkins, the entirety of it.
 

 1
 
 tDiscussion
 

 Title IV of Book II (Things and the Different Modifications of Ownership) of the Louisiana Civil Code addresses predial servitudes which are defined as a charge on a servient estate for the benefit of a dominant estate where the two estates belong to different owners. La. C.C. art. 646. Predial servitudes may be natural, legal and voluntary or conventional. La. C.C. art. 654. Legal servitudes are limitations on ownership established by law for the benefit of the general public or for the benefit of particular persons. La. C.C. art. 659.
 

 Specifically, Chapter 3 of the title on predial servitudes addresses legal servi-tudes, with Section 1 of that chapter addressing limitations of ownership. Included within Section 1 are La. C.C. arts. 667 and 668 which read in relevant part:
 

 Article 667. Limitations on use of property
 

 Although a proprietor may do with his estate whatever he pleases, still he can
 
 *126
 
 not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
 

 Article 668. Inconvenience to neighbor Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
 

 Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors’s [neighbor’s] house, because this act occasions only an inconvenience, but not a real damage.
 

 Obligations of vicinage imposed by Articles 667 and 668 are legal servi-tudes imposed on the owner of property. As a general rule, the [^landowner is free to exercise his rights of ownership in any manner he sees fit. He may even use his property in ways which occasion some inconvenience to his neighbor. However, his extensive rights do not allow him to do real damage to his neighbor.
 
 Rodrigue v. Copeland,
 
 475 So.2d 1071 (La.1985),
 
 cert. denied,
 
 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986). In determining whether a work or activity occasions real damage or mere inconvenience, a court is required to determine the reasonableness of the conduct in light of the circumstances. This analysis requires consideration of factors such as the character of the neighborhood, the degree of intrusion and the effect of the activity on the health and safety of the neighbors.
 
 Id.
 

 The prohibitions contained in Articles 667 and 668 are not limited to physical invasion of neighboring property. The damage may well be intrinsic in nature, a combination of facts and conditions which, taken together, do not involve a physical invasion but which, under the circumstances, are nevertheless by their nature the very refinement of injury and damage.
 
 Rodrigue v. Copeland, supra.
 
 The law of nuisance in Louisiana, in accord with the general rule throughout the United States, is based on common sense and reason. So long as a person does not violate any statute he has a right to use his property as he sees fit limited only by the prohibition against abuse of the privilege by undue interference with the rights of his neighbor.
 
 Woods v. Turbeville,
 
 168 So.2d 915 (La.App. 2d Cir.1964).
 

 |9If there is a substantial interference with the rights of a plaintiff to the peaceful use of his premises and to such rest and quiet as may be expected in such a neighborhood, and if the interference is not temporary but obviously will continue unless prevented by judicial process, a right to injunctive relief exists.
 
 Fos v. Thomassie,
 
 26 So.2d 402 (La.App.Orleans 1946).
 
 See also, Diefenthal v. Longue Vue Management Corp.,
 
 561 So.2d 44 (La.1990);
 
 Rodrigue v. Copeland, supra.
 

 Section 2 of the chapter on legal servi-tudes governs common enclosures. In that section, La. C.C. arts. 684 and 685 read as follows:
 

 Article 684. Enclosures
 

 A landowner has the right to enclose his land.
 

 Article 685. Common Fences
 

 A fence on a boundary is presumed to be common unless there is proof to the contrary.
 

 When adjoining lands are enclosed, a landowner may compel his neighbors to contribute to the expense of making and repairing common fences by which the respective lands are separated.
 

 When adjoining lands are not enclosed, a landowner may compel his
 
 *127
 
 neighbors to contribute to the expense of making and repairing common fences only as prescribed by local ordinances.
 

 In an early ruling, the court held that the owner of a lot had the right to build an 18 to 20-foot fence on his own lot.
 
 Parle v. D’Arcy,
 
 28 La. Ann. 424, 1876 WL 8566 (1876).
 

 In this dispute, the trial court’s ruling rests upon the finding of a nuisance under Civil Code Article 667. That article provides a legal predial servitude regulating the use and enjoyment of neighboring properties. Additionally, however, our law for legal servitudes addresses the neighboring owners’ rights to construct a fence on their common boundary | inwith or without joint expenditures by both owners. La. C.C. art. 685. With the exception of the portions of Six C’s fence that may have encroached on Atkins’ tract or involved Atkins’ access rights to the road, Six C constructed a fence along the two owners’ common boundaries. That right for a boundary fence being specifically insured as a legal servitude of which neither of the adjacent owners may complain, the construction of such fence cannot also be held a nuisance under the more general pronouncement of Article 667. Thus, the trial court erred in ordering the removal of the entirety of the fence.
 

 Additionally, we reject Atkins’ contention that the height of the fence is unreasonable and that Six C may be required to lower it to allow for the access of deer. This argument is also answered by the clear implications of the Civil Code provisions. The owner of land “may raise his house as high as he pleases” even though “it should occasion some inconvenience to his neighbor.” La. C.C. art. 668. Likewise, the code requires a property owner to obtain a conventional predial servitude of view “to prevent the raising of constructions on the [neighboring] servient estate that would obstruct the view.” La. C.C. art. 701. In the absence of the neighbors’ contracting for such servitude, a tall construction on the adjacent tract does not create a nuisance.
 

 Our determination that Six C may maintain its boundary fences adjoining Atkins’ property does not, however, completely resolve the controversy between the parties as shown by the evidence presented to the trial court. The trial court correctly expressed its concern that the Atkins |nproperty appeared landlocked or totally enclosed by the fence and away from an access road because of the property’s location. Indeed, the survey map shown above depicts the nearest road as located in Section 10 and not contiguous to the 9.98-acre tract in Section 11 identified in the survey. While this case was tried as a nuisance claim and a real action involving these adjoining owners’ boundaries, all issues pertaining to their four common boundaries comprising each side of this rectangular tract have not been resolved by the judgment, and even more significant, the judgment leaves Atkins’ tract an enclosed estate. Under La. C.C.P. art. 3693,
 
 [1]
 
 the boundary action which these parties effectively litigated called for the court to fix their disputed boundaries and, in the process, also address the issue of an enclosed estate.
 

 The rights of landowners of enclosed estates are governed also by our law for legal servitudes which provides:
 

 Article 689. Enclosed Estate; right of passage
 

 The owner of an estate that has no access to a public road may claim a right
 
 *128
 
 of passage over neighboring property to the nearest public road. He is bound to indemnify his neighbor for the damage he may occasion.
 

 Article 690. Extent of Passage
 

 The right of passage for the benefit of an enclosed estate shall be suitable for the kind of traffic that is reasonably necessary for the use of that estate.
 

 The trial court’s judgment reflects that two encroachments, one by each party, exist respectively on the west and east ends of the property |12affecting narrow strips of land. These encroachments, however, may well amount to sufficient adverse possession to affect the ownership of these tracts, as Atkins’ testimony admitted that the adverse possessory actions by the parties and their ancestors-in-title had existed for over fifty years.
 

 The trial court’s judgment required Six C to bring a petitory action in accordance with La. C.C.P. art. 3662(2) within 60 days of the finality of the present judgment because of its encroachment on the east side of Atkins’ property. Inconsistently, the judgment made no such requirement for Atkins’ encroachment extending to the road on the west side. This inconsistency and the inconclusiveness of the ruling regarding ownership and the fixing of the east and west boundaries apparently resulted from the trial court’s acceptance of the survey
 
 carte blanche.
 
 Such acceptance makes the Atkins tract an enclosed estate, ignoring Atkins’ occupancy and possession that had apparently extended to the private road, which is a visible boundary on the west side of his property. That road appears located in Section 10 beyond Atkins’ western boundary called for by the governmental description for his property along the section line between Sections 10 and 11. Nevertheless, the undisputed testimony concerning Atkins’ adverse possession into Section 10 to the road does not appear to have been considered.
 
 [2]
 

 For these disputes between adjacent landowners, the court shall fix the boundary according to the ownership of the parties; if neither party | ^proves ownership, the boundary shall be fixed according to limits established by possession. La. C.C. art. 792. Although the findings of a surveyor are important for the evidentiary considerations in the boundary action, “the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties.” La. C.C.P. art. 3693. Therefore, should the adjacent owners’ possessions exhibited within existing visible bounds be at variance with their common boundary identified by the descriptions in their titles, the actual corporeal possession and any change in ownership resulting from adverse possession may prevail over a surveyor’s determination of that common boundary. La. C.C. art. 794.
 

 In conclusion, because of the above error in the judgment regarding the issue of nuisance, we reverse the judgment’s order for the removal of Six C’s fence around the Atkins property. The fence shall remain insofar as it extends along the common boundaries that are undisputed on the north and south sides of the Atkins tract. However, because of the inconclusiveness of the trial court’s judgment for the boundary disputes on the east and west sides of the property and for the issue of Atkins’ access to his property, the case is remanded for further proceedings for those determinations. The existence of any private road(s), or conventional predial servitudes
 
 *129
 
 of passage, extending to the Atkins tract as the dominant estate should be determined so as to address and alleviate the issue of an enclosed estate. The court should also consider the propriety of any fence impediment pertaining to such road as imposed by the owners of the 14servient estate. La. C.C. art. 705;
 
 Cf., Kaffie v. Pioneer Bank & Trust Co.,
 
 184 So.2d 595 (La.App. 2d Cir.1965);
 
 Clause v. Broussard,
 
 146 So.2d 828 (La.App. 3d Cir.1962),
 
 writ denied,
 
 243 La. 1004, 149 So.2d 763 (1963).
 

 Conclusion
 

 For the foregoing reasons, the judgment of the trial court ordering the removal of Six C’s fence on the grounds of nuisance is reversed. The case is remanded for a determination of the boundary disputes on the east and west sides of the property and Atkins’ access to his property. Costs of appeal shall be borne equally by the parties.
 

 JUDGMENT REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . La. C.C.P. art. 3693 provides:
 

 After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between the contiguous lands in accordance with the ownership or possession of the parties.
 

 [2]
 

 . Six C’s placement of its fence along the road was arguably a tacit recognition of Atkins’ existing possession of his tract to the road, and if Atkins’ ownership is found to extend to the road, the placement of such fence on Atkins’ side of the road was arguably improper.