| HARMONIA, LLC AND | * | NO. 2020-CA-0253 |
| DEVENEY | | |
| COMMUNICATIONS | * | |
| CONSULTING, LLC | | COURT OF APPEAL |
| | * | |
| VERSUS | | FOURTH CIRCUIT |
| | * | |
| FELICITY PROPERTY CO., | | STATE OF LOUISIANA |
| LLC, HOWARD PILE | * * * * * * * | |
| DRIVING COMPANY, INC., | | |
| PALMISANO CONTRACTORS, | | |
| LLC, AND STUDIO WTA, LLC | | |

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| JOHN HARKINS AND HARKINS, THE FLORIST OF LOUISIANA, INC. | NO. 2020-CA-0254 |
| VERSUS | |
| FELICITY PROPERTY CO., LLC AND PALMISANO CONTRACTORS, LLC. | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-08669, DIVISION "F"
Honorable Christopher J. Bruno, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Judge Edwin A. Lombard, Judge Rosemary Ledet, Judge Tiffany G. Chase)

Paul M. Sterbcow
Beth Abramson
LEWIS KULLMAN STERBCOW & ABRAMSON
601 Poydras Street, Suite 2615
New Orleans, LA 70130

    COUNSEL FOR PLAINTIFFS/APPELLANTS

Judy Y. Barrasso
Jamie L. Berger
Stephen R. Klaffky
Lance W. Waters
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC
909 Poydras Street, Suite 2400
New Orleans, LA 70112

COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**November 25, 2020**

This is a neighboring property dispute. The dispute arises out of the construction of a multi-story condominium complex—The Julian—on neighboring property to a florist shop operated by John Harkins and Harkins, the Florist of Louisiana, Inc. (collectively "Harkins").[1] In this suit, Harkins alleges that the construction activity hindered customer access to its florist shop; it seeks not only property damages, but also economic damages. Although Harkins named multiple defendants in this suit, this appeal involves only two: (i) a former owner of The Julian,[2] Winingder Enterprises, LLC. ("Winingder"); and (ii) the developer and property manager of The Julian, Felicity Property Co., LLC ("Felicity") (collectively "Movers"). Movers filed a motion for partial summary judgment

---

[1] In February 2019, the trial court granted a motion of one of the defendants to transfer and consolidate Harkins' suit with *Harmonia, LLC and Deveney Communications Consulting, LLC v. Felicity Property Co., LLC, Howard Pile Driving Company, Inc., Palmisano Contractors, LLC, and Studio WTA, LLC*, Civil District Court No. 2017-08669. The *Harmonia* suit, which was filed by another neighboring property owner, is not at issue on this appeal.

[2] We use the term "The Julian" for simplicity sake to refer to the 1581 Magazine property on which The Julian condominium complex was constructed. At separate times, Winingder, one of the Movers, and 1581 Magazine St., LLC, another named defendant, have owned the 1581 Magazine property on which The Julian was constructed. Winingder was a former owner (from March 2014 to November 2015); 1581 Magazine St., LLC, is the current owner. As noted elsewhere in this opinion, Felicity is the developer and property manager of the Julian; it is undisputed that it has never been an owner.

1

seeking the dismissal of Harkins' economic damages claim against them. From the trial court's December 30, 2019, judgment granting Movers' partial summary judgment motion, Harkins appeals. For the reasons that follow, we affirm.

<strong>FACTUAL AND PROCEDURAL BACKGROUND</strong>

Since the early 1980s, Harkins has owned and operated a florist shop in New Orleans, Louisiana. The florist shop is located on a small, triangular piece of property bounded by three streets—Magazine Street, Richard Street, and Felicity Street. In late 2015, construction of The Julian—a multi-story condominium complex—commenced across Richard Street from the florist shop, as reflected by the map introduced at the summary judgment hearing and reproduced below.[3]



In January 2017, construction of the Julian was substantially completed. During the construction, Harkins never sought injunctive relief. In September

---

[3] The Julian's address is 1581 Magazine Street; Harkins' florist shop's address is 1601 Magazine. "The Julian Apartments" and "Harkins the Florist" are separated by a short segment of Richard Street.

2017, Harkins filed this damage suit against, among other, the Movers, averring as follows:

- The construction of the multi-story building on the 1581 Magazine Street property has included pile driving and the use of heavy equipment, which activity caused and continues to cause structural damage to the Harkins 1601 Magazine Street building;

- The construction of the multi-story building on the 1581 Magazine Street property, through street closures, sidewalk closures, and parking obstacles, blocks and/or hinders access of customers and/or potential customers to the Harkins 1601 Magazine Street building; and

- The hindrance of access to the Harkins 1601 Magazine Street building caused and continues to cause customers and potential customers not to shop at the business, which has resulted in Harkins losing sales and sustaining economic loss to its business.

Harkins further averred that the defendants failed to take all necessary precautions to protect Harkins' property and business from injury and deprived Harkins of use of its property. Harkins still further averred that, as a result of the defendants' fault and negligence, it has sustained property damage to its florist building and past, present, and future business economic loss.

In response, Movers filed a motion for partial summary judgment, seeking dismissal of Harkins' economic loss damages claim against them. In support, Movers made the following two arguments. First, they contended that any inconvenience associated with the construction activities around Harkins' property was not actionable under La. C.C. arts. 667 and 668, the vicinage articles that mandate neighboring property owners accept "some inconvenience" in the enjoyment of their property from their neighbor's activities.[4] Second, they

---

[4] As to the claims against Felicity, the Movers contended that Harkins had no cause of action given that Felicity is not the owner of the 1581 Magazine Street property and that Felicity had no

3

contended that Harkins cannot recover its alleged lost profits because it is unable to prove the economic loss it claims with reasonable certainty.

Opposing the motion, Harkins presented, among other evidence, photographs taken by its employee, John Armbruster, during the construction of The Julian—between March 2016 and January 2017. (The photographs were introduced as attachments to Mr. Armbruster's affidavit.) The photographs depicted construction activity, including fencing and construction-related equipment and vehicles parked on the street. According to Harkins, the photographs demonstrated that the array of construction-related activities amounted to more than a mere inconvenience.

At the close of the hearing, the trial court concluded that the construction activity was a mere inconvenience that was not compensable. In so finding, the trial court orally reasoned that to accept Harkins' argument "would cause a complete standstill of all activity of construction in New Orleans because one business is complaining that customers have to park away from the building." The trial court, thus, granted the Movers' motion for partial summary judgment and dismissed Harkins' economic damage claims against them. In its judgment, the trial court made an express determination, pursuant to La. C.C.P. art. 1915(B)(1), that its judgment granting the partial summary judgment motion was final. This appeal followed.

## DISCUSSION

_____

duty. The exception of no cause of action was not decided by the trial court. We, thus, do not address it.

In this case, Movers filed a motion for partial summary judgment seeking dismissal of one of multiple claims—Harkins' economic damages claim.[5] Such a motion for partial summary judgment is authorized by La. C.C.P. art. 966(E).[6] When a trial court properly certifies a judgment granting a partial summary judgment motion authorized by La. C.C.P. art. 966(E) as final, the judgment is appealable. La. C.C.P. art. 1915(B)(1).[7] Here, we find no abuse of discretion in the trial court's certification of the judgment granting the Movers' motion for partial summary judgment as final. *See Templet v. State ex rel. Dep't of Pub. Safety & Corr.*, 05-1903, p. 6 (La. App. 1 Cir. 11/3/06), 951 So.2d 182, 185 (citing *R.J. Messinger, Inc. v. Rosenblum*, 04-1664, p. 13 (La. 3/2/05), 894 So.2d 1113, 1122, and observing that "[b]ecause the trial court gave explicit reasons in certifying the appeal, we are to review the certification applying the abuse of discretion standard").[8]

---

[5] Harkins' other claim is for property damages—that vibrations from construction activities caused cracks in certain wall, joints, and masonry element of the flower shop. As Movers point out, "[t]hat purported cracking is not alleged to have caused the lost profits at issue in this appeal." This appeal relates solely to whether Harkins can recover lost profits based on the alleged hindrance of customer access caused by the construction activities. The property damage claim is an entirely separate claim that remains pending in the trial court.

[6] La. C.C.P. art. 966(E) provides that "[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties."

[7] La. C.C.P. art. 1915(B)(1) provides that "[w]hen a court renders a . . . partial summary judgment . . . as to one or more but less than all of the claims, demands, issues, or theories against a party . . . , the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay."

[8] In its judgment, the trial court enumerated the following five reasons for its determination that there was no just reason for delaying an appeal of this matter:

  i.   final adjudication of Plaintiffs' economic claims will crystalize and expedite the issues for the parties going forward;

  ii.  final adjudication of Plaintiffs' economic claims will determine the scope of discovery and expert testimony;

Applying well-settled procedural methodology and principles,[9] we review a trial court's judgment granting a summary judgment motion *de novo*, "using the same criteria that the trial judge utilizes in his determination of whether summary judgment is appropriate, in the light most favorable to the non-moving party." *Hooper v. Hero Lands Co.*, 15-0929, p. 12 (La. App. 4 Cir. 3/30/16), 216 So.3d 965, 973.

On appeal, Harkins assigns only one error: "[t]he Trial Court erred when it granted [Movers'] Motion for Partial Summary Judgment with respect to Harkins' economic loss claims in light of the existence of genuine issues of material fact regarding [Movers'] construction related activities and their impact on Harkins'

---

iii.    final adjudication of Plaintiffs' economic claims will promote judicial efficiency and potentially help avoid unnecessary and undue expense for the parties;

iv.    final adjudication of Plaintiffs' economic claims will avoid the risk of later retrying the case; and

v.    this Court's ruling on the Motion for Partial Summary Judgment will not be mooted by future developments in the case.

[9] The summary judgment procedure is favored and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). The governing statutory provision, La. C.C.P. art. 966, provides that a motion for summary judgment shall be granted if, "[a]fter an opportunity for adequate discovery," the "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Bufkin v. Felipe's La., LLC*, 14-0288, p. 3 (La. 10/15/14), 171 So.3d 851, 854. "[T]he burden of proof remains with the movant. [But], if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.* "This requires the [non-moving party] to make a positive showing of evidence creating a genuine issue as to an essential element of [its] claim; mere speculation is not sufficient." *Finch v. HRI Lodging, Inc.*, 49,497, p. 7 (La. App. 2 Cir. 11/19/14), 152 So.3d 1039, 1043. Whether a fact is material is a determination that must be made based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270; *Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337.

business." In addressing Harkins' contention, we divide our analysis into two sections: vicinage claims and negligence claims.

*Vicinage claims*

In support of its claim against the former property owner, Winingder,[10] Harkins relies on the Louisiana Civil Code articles on vicinage, La. C.C. arts. 667[11] and 668.[12] Addressing the vicinage obligations imposed by these two articles, the appellate court in *Atkins v. Six C Properties, L.L.C.*, 45,682, pp. 7-8 (La. App. 2 Cir. 11/3/10), 55 So.3d 120, 126, observed:

> As a general rule, the landowner is free to exercise his rights of ownership in any manner he sees fit. He may even use his property in ways which occasion some inconvenience to his neighbor. However,

---

[10] Although Harkins in its brief to this court refers also to the current owner, 1581 Magazine St., LLC, Harkins' claim against 1581 Magazine St., LLC is not before us. 1581 Magazine St., LLC, was not a party to the motion for partial summary judgment. Harkins apparently concedes it lacks a claim against the non-owner Mover, Felicity, under the vicinage articles. Harkins, however, asserts that it has a valid negligence claim against Felicity for economic damages. As discussed elsewhere in this opinion, we find that argument unpersuasive.

[11] La. C.C. art. 667 provides:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

[12] La. C.C. art. 668 provides:

> Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.

> Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage.

his extensive rights do not allow him to do real damage to his neighbor. In determining whether a work or activity occasions real damage or mere inconvenience, a court is required to determine the reasonableness of the conduct in light of the circumstances. This analysis requires consideration of factors such as the character of the neighborhood, the degree of intrusion and the effect of the activity on the health and safety of the neighbors.

*Id.* (internal citations omitted). Moreover, "[a] finding of liability under Article 667 requires either proof of personal injury or physical damage to property or proof of the presence of some type of excessive or abusive conduct." *Lodestro Co. v. City of Shreveport*, 33,901, p. 5 (La. App. 2 Cir. 9/27/00), 768 So.2d 724, 727 (citing *Constance v. State Through Dep't of Transp. & Dev. Office of Highways*, 626 So.2d 1151, 1157 (La. 1993); and *State Through Dep't of Transp. & Dev. v. Chambers Inv. Co.*, 595 So.2d 598, 605 (La. 1992)).

Harkins contends that there are disputed material facts regarding whether Movers' conduct was a mere inconvenience, abusive, or excessive, which issues are not appropriate to be resolved through summary judgment. In support, Harkins cites the jurisprudence characterizing the issue of whether an activity is a mere inconvenience or a real damage as a question of fact. *See Acadian Heritage Realty v. City of Lafayette*, 434 So.2d 182, 185 (La. App. 3rd Cir. 1983). Given this characterization coupled with the evidence it presented in opposition to the summary judgment motion including the photographs, Harkins contends that the trial court erred in failing to find a genuine issue of material fact regarding Movers' construction-related activities and their impact on Harkins' business.

Contrary to Harkins' contention, this is an appropriate case in which to grant summary judgment. As the Louisiana Supreme Court has recognized in *Hogg v.*

*Chevron USA, Inc.*, 09-2632, 09-2635, p. 10 (La. 7/6/10), 45 So.3d 991, 999, questions of reasonableness can, under appropriate circumstances, be resolved on summary judgment. In *Hogg*, the Supreme Court found the circumstances were appropriate, observing that "[b]ecause there are no factual conflicts presented, only conflicting conclusions based on the facts . . . , this question is one appropriate for resolution by summary judgment." *Id*. The Supreme Court further observed that "summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts." *Id*. (internal citation and quotations omitted). Indeed, "[w]hen reasonable minds must inevitably conclude that the mover is entitled to judgment on the undisputed facts presented, the motion must be granted." *Van Cleave v. Temple*, 18-1353, 18-1354, pp. 16-17 (La. App. 1 Cir. 5/31/19), 278 So.3d 1005, 1015; *see also Johnson v. Edmonston*, 383 So.2d 1277, 1281 (La. App. 1st Cir. 1980). This is such a case.

The crux of Harkins' argument is that fencing, a construction trailer, and other vehicles and equipment occupied parking spaces and sidewalks around the construction site and its florist shop. Harkins argues that vehicles surrounding the florist shop made it appear that Harkins' florist shop was no longer open; however, Harkins concedes it was never forced to close due to the construction. Harkins also concedes that customer access was never blocked, but it contends that customer access was substantially hindered. Harkins argues that its customers were forced to park further away or to walk on the other side of the street, allegedly hindering access and causing lost sales. Harkins also argues that material deliveries to the

construction site occasionally blocked traffic. Harkins highlights an event that occurred on the Friday before Mother's Day, May 6, 2016, which it emphasizes is one of the florist shop's busiest days. On that day, Felicity Street and Richard Street were closed to traffic due to cement being poured for The Julian's foundation; Magazine Street, however, remained opened.

Movers counter that each of the inconveniences that Harkins relies upon has been previously held to be non-compensable under La. C.C. art. 668 as a matter of law. The jurisprudence, as Movers contend, has recognized that typical construction activities are mere inconveniences that are not compensable. *Constance*, 626 So.2d at 1156 (internal citation and quotations omitted) (recognizing damages that result in "discomfort, disturbance, inconvenience, and *even sometimes financial loss* as an ordinary and general consequence of public improvements are not compensable"); *Lodestro Co. v. City of Shreveport*, 33,901, p. 6 (La. App. 2 Cir. 9/27/00), 768 So.2d 724, 728 (recognizing that "the lack of access from the street, the barricades, the ditch, the equipment and supplies placed at times in the work area in front of the store, to be typical of the inconveniences encountered during construction projects"); *Dep't of Highways v. Capone*, 298 So.2d 94, 97 (La. App. 1st Cir. 1974) (recognizing that "no person, be he property owner or not, has the absolute, inalienable and unqualified right to utilize a public street for parking purposes").

Movers contend that the *Constance* case is especially instructive. In that case, a bicycle shop—Cleary—claimed it suffered economic damages as a result of the restricted access to its property caused by the reconstruction of the Interstate-10 exit ramp to Clearview Parkway by the State Department of Transportation and Development ("DOTD"). At the outset, the Supreme Court framed the issue

10

presented as "whether restricted access to property with accompanying reduction in property value and temporary loss of business income triggers the entitlement to compensable damages." *Constance*, 626 So.2d at 1152.

Answering that question in the negative, the Supreme Court reasoned that, during the approximately seven-month construction period, barricades and road signs limited access to the bicycle shop; but the bicycle shop never closed a single day during the construction period. Moreover, the bicycle shop's "list of customers, who were inconvenienced by these impediments to access, indicated that access was available, if circuitous." *Constance*, 626 So.2d at 1157. Given these circumstances, the Supreme Court concluded that "[t]he barricades, the signs, and the parked equipment, which impeded or interfered with access to [Cleary's] property for a period of seven months or less, are precisely the types of disturbance, inconvenience, or even financial loss ordinarily occasioned as a general consequence of such a public improvement." *Constance*, 626 So.2d at 1157-58. Thus, despite evidence that the construction hindered customer access to Cleary's bicycle shop, the Supreme Court held that such inconvenience is typical of construction and not compensable.

Movers also cite the *Lodestro* case. The appellate court in *Lodestro*, applying the principles in *Constance* and *Chambers*, rejected a clothing store's claim for economic damages allegedly caused by the city's construction activities that hindered customer access to the store. In *Lodestro*, the clothing store's principal complaint was that, during the construction, its customers could no longer drive up to the store's front entrance for them to pick up packages or for someone to drop them off to shop. Rather, its customers had to park two blocks away in a garage and walk to the store. Although its customers testified that they had trouble

getting to the store during the construction, the customers' testimony was that "access, though inconvenient, was possible." *Lodestro*, 33,901, p. 5, 768 So.2d at 727. Given these circumstances, the court held that although the construction project made access to the clothing store inconvenient, it neither prohibited access nor gave rise to an actionable claim under La. C.C. art. 667. In so holding, the court observed:

> From our review of the record we find the inconvenience experienced by Lodestro Company, including the lack of access from the street, the barricades, the ditch, the equipment and supplies placed at times in the work area in front of the store, to be typical of the inconveniences encountered during construction projects or public improvements and to be the type of general damage sustained by other similarly situated businesses or property in the construction area as shown by the pictures submitted into evidence.

*Lodestro*, 33,901, p. 6, 768 So.2d at 728.

Harkins contends that Movers' reliance on *Constance*, *Lodestro*, and other similar inverse condemnation cases is misplaced given this case involves private-party defendants. Harkins' position is that "[Movers] here do not enjoy the same broad legal rights as state related entities are entitled to exercise under the Louisiana state constitution and for the public good." The Louisiana Supreme Court, however, has held that the standard for adjudicating vicinage claims is the same regardless of whether the parties are state or private entities. *Chambers*, 595 So.2d at 604 (observing that "in order to decide whether the State caused any damage to the claimant's right of ownership, we must determine whether the State's construction activities resulted in inconveniences that must be tolerated by the claimant under Article 668 or, rather, resulted in more serious inconveniences or interference that may be suppressed under Article 667"). Indeed, as the Supreme

Court observed in the *Constance* case "[w]hen the neighboring land is owned by the State, those [vicinage] articles are no less applicable." 626 So.2d at 1155. Thus, the inverse condemnation jurisprudence applies with equal force here.[13]

Summarizing, the jurisprudence has held that typical construction-related activities do not rise above the level of a mere inconvenience. During construction of a multi-story building, like The Julian, it is necessary that construction equipment and materials, at times, be placed on the city's streets and sidewalks. Although this may result in hindered access to neighboring property owners' businesses, the jurisprudence has classified this type of hindered access as a mere inconvenience, which is not compensable under the vicinage articles. Such is the case here.

*Negligence claims*

Harkins next contends that it has a cause of action in negligence, under La. C.C. art. 2315, against Movers for blocking or hindering access to public streets and sidewalks during construction. On appeal, Harkins divides the analysis of its negligence claim, separately addressing its claim against the former property owner—Winingder—and the non-owner, property manager—Felicity.

In support of its position that a property owner can also be liable under general tort principles for damages the owner causes to his neighbor, Harkins cites

---

[13] Moreover, this court has looked to inverse condemnation cases construing the vicinage articles in addressing disputes between private property owners. *See Winingder v. Balmer*, 93-0874 (La. App. 4 Cir. 2/11/94), 632 So.2d 408, 414 (observing that "[o]ur analysis of the legal consequences of Balmer's action in locating her fence on the property line, given the factual conclusions of the trial court, is guided by Justice Dennis' excellent summary of the relationship between articles 667 and 668 of the Louisiana Civil Code, and the distinction between 'damage' and 'inconvenience'" in the *Chambers* case).

two cases: *Varnado v. Southern University At New Orleans*, 95-2619 (La. App. 4 Cir. 5/1/96), 673 So.2d 1289; and *Cooper v. Louisiana Dep't of Pub. Works*, 03-1074 (La. App. 3 Cir. 3/3/04), 870 So.2d 315. Movers counter that there is no general duty in tort allowing Harkins to circumvent the vicinage obligations of neighboring property owners.

Both cases Harkins cites, as Movers point out, are distinguishable. Both cases involve violations of other sources of law establishing a duty. *Varnado* involved a duty imposed by a zoning law that the defendant's illegal parking lot violated; *Cooper* involved a duty imposed by statute, La. C.C. art. 655, which provides a natural servitude of drainage. Harkins cites no such other source of law to establish a duty here. Moreover, both cases Harkins cites treat liability under La. C.C. art. 667 and La. C.C. art. 2315 as co-extensive. *Varnado*, 95-2619, p. 2, 673 So.2d at 1291 (observing that "[t]he legal basis for SUNO's liability is found in tort pursuant to LSA–C.C. art. 2315 as well as property law under C.C. arts 667-668"); *Cooper*, 03-1074, p. 4, 870 So.2d at 322 (observing that "a violation of Article 667 constitutes fault within the meaning of Article 2315").[14]

Accordingly, we hold, as Movers contend, that when, as here, a neighboring property owner's lawful conduct results in a mere inconvenience under the vicinage articles, La. C.C. arts. 667 and 668, by definition, the property owner's conduct does not breach any duty to its neighbor under the negligence article, La.

---

[14] Movers also cite the principle that "when two articles of the Civil Code conflict, or appear to conflict, the specific article will be given precedence and will be enforced in preference to the more general provision." *Succession of Ramp*, 205 So.2d 86, 89-90 (La. App. 4th Cir. 1967), *writ issued*, 251 La. 868; 206 So.2d 714 (1968), *and aff'd*, 252 La. 660; 212 So.2d 419 (1968).

C.C. art. 2315. Accordingly, we reject Harkins' argument that it has a cause of action in negligence against the former property owner, Winingder, for blocking public streets and sidewalks for typical construction activity.

As noted, Harkins separately addresses its negligence claim against the non-owner, property manager, Felicity. According to Harkins, Felicity, in its capacity as property manager, is liable for Harkins' economic damages because Felicity allowed and did nothing to prevent the following:

- streets and sidewalks surrounding the Harkins building to be blocked, closed, or both during construction of The Julian;

- the erection of fencing directly in front of the Harkins building; and

- construction equipment to be placed and construction vehicles to park on all immediately adjoining sides of the Harkins building, areas that were not legal parking spaces.

These alleged actions by Felicity, however, are the same alleged actions that we found insufficient to establish either a negligence or a vicinage claim against the former property owner, Winingder. Although the vicinage articles, by their express terms, do not apply to non-property owners, Harkins cites no other source of duty as a basis to impose liability based on these actions on Felicity. Moreover, assuming Felicity took these actions, it did so in a representative capacity for the property owner. We thus find no error in the trial court's grant of the motion for partial summary judgment in favor of Felicity.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**