PENZATO, J.
Appellant, Cherlyn Denise Crockerham,[1] appeals the trial court's judgment granting summary judgment in favor of Appellee, Woman's Hospital Foundation *606 (Woman's Hospital), and dismissing her claims against Woman's Hospital. For the reasons that follow, we amend the summary judgment and reverse, in part, and affirm, in part, the judgment as amended.
FACTS AND PROCEDURAL HISTORY
On May 8, 2009, Ms. Crockerham underwent a robotic-assisted laparoscopic hysterectomy (robotic procedure) performed by Dr. Ryan Dickerson and Dr. Jacob Estes at Woman's Hospital. Ms. Crockerham claims that as a result of this procedure, she lost bladder function, and in accordance with the Louisiana Medical Malpractice Act,[2] she submitted her claim to the Medical Review Panel. With regard to Woman's Hospital, the Medical Review Panel determined that the evidence did not support the conclusion that Woman's Hospital failed to comply with the appropriate standard of care. The Medical Review Panel also found that there was a material issue of fact with regard to Woman's Hospital as to whether Dr. Dickerson had the proper credentials to perform the surgery.
Ms. Crockerham filed a lawsuit on October 20, 2011, and named as defendants, Louisiana Medical Mutual Insurance Company, Dr. Dickerson, Dr. Estes, and Woman's Hospital. Ms. Crockerham alleged that Woman's Hospital was negligent in permitting Dr. Dickerson to perform the robotic procedure without the proper credentials and failing to obtain informed consent because Dr. Dickerson did not disclose that he had never operated using the robotic device nor seen it used on a live human being.
After discovery took place, Woman's Hospital filed a motion for summary judgment asserting that Ms. Crockerham had no evidence that Dr. Dickerson was negligently credentialed and that there was no expert testimony that Woman's Hospital had breached the standard of care. Attached to the motion was a memorandum in support with several exhibits: a position paper of Woman's Hospital submitted to the Medical Review panel; a copy of Ms. Crockerham's complaint; the Medical Review Panel opinion and other documents filed with the Medical Review Panel; the petition in this matter; the deposition of Dr. Dickerson; the deposition of Dr. James M. Wheeler, expert for Ms. Crockerham; the deposition of Ms. Crockerham; and the affidavit of Creighton Abadie, the attorney representative on the Medical Review Panel, summarizing the findings of the Medical Review Panel.[3]
Both parties maintain that by clerk of court notice dated November 30, 2016, the hearing on the motion for summary judgment was originally set for May 8, 2017. Both parties further agree that they then received a second notice from the clerk of court resetting the hearing for March 20, 2017.[4] Counsel for Ms. Crockerham admits he received the second notice, but asserts that he misunderstood it. As a result, Ms. Crockerham filed no opposition to the motion for summary judgment prior to the March 20, 2017 hearing date. On that date, only counsel for Woman's Hospital appeared, and the trial court granted the *607 summary judgment. The trial court signed the judgment in accordance with his oral ruling on the same date, dismissing Ms. Crockerham's lawsuit against Woman's Hospital.
Unaware that the hearing had taken place on March 20, 2017, Ms. Crockerham filed an opposition to the motion for summary judgment on April 27, 2017. The March 20, 2017 judgment was not served on Ms. Crockerham's counsel until August 1, 2017. On August 11, 2017, Ms. Crockerham filed a motion for new trial, which the trial court summarily denied without a hearing on August 16, 2017. In its denial, the trial court stated:
Mover acknowledges that the Dec. 2, 2016 notice moved the hearing from 5/8/17 to 3/20/17. For whatever reason mover did not file an opposition until April 27, 2017 after scheduled hearing. Therefore, by admission the [motion for summary judgment] was not opposed.
Ms. Crockerham filed this appeal from the March 20, 2017 judgment granting the motion for summary judgment and dismissing her claims. She assigns as error that the trial court committed error in failing to find a genuine issue of material fact based on the Medical Review Panel opinion and the deposition of Dr. Wheeler. Ms. Crockerham asserts that even though the motion for summary judgment was unopposed, the exhibits submitted by mover created a genuine issue of material fact.
SUMMARY JUDGMENT
Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2).[5] In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750.
The initial burden of proof is on the mover. If the mover will not bear the burden of proof at trial, the mover's burden does not require him to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. Thereafter, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
Jackson v. City of New Orleans, 2012-2742 (La. 1/28/14), 144 So.3d 876, 882, cert. de *608 nied , --- U.S. ----, 135 S.Ct. 197, 190 L.Ed.2d 130 . (2014).
As pointed out by Ms. Crockerham, the failure to file an opposition does not automatically require that the motion for summary judgment be granted, as the initial burden of proof is on the mover. La. C.C.P. art. 966(D)(1). In deciding a summary judgment motion, it must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. If not, summary judgment must be denied in favor of a trial on the merits. Dimattia v. Jackson Nat. Life Ins. Co., 2004-1936 (La. App. 1 Cir. 9/23/05), 923 So.2d 126, 129. It is important to note, however, that when a motion for summary judgment is made and properly supported, an adverse party may not rest on the mere allegations or denials of her pleading. La. C.C.P. art. 967(B). Therefore, we must first conduct a de novo review of the evidence submitted with the motion for summary judgment and determine if there were no genuine issues of material fact.
LAW AND DISCUSSION
Ms. Crockerham asserts that the trial court erred in failing to find that the Medical Review Panel opinion and the deposition of her expert, Dr. Wheeler, which was submitted by Woman's Hospital created a genuine issue of material fact.
Negligent Credentialing
Ms. Crockerham has made a claim against Woman's Hospital for negligent credentialing. A plaintiff's claim for negligent credentialing is not entitled to the limitations on liability contained in Louisiana's Medical Malpractice Act, but should proceed in accordance with general tort law. Billeaudeau v. Opelousas Gen. Hosp. Auth., 2016-0846 (La. 10/19/16), 218 So.3d 513, 527. Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. Daniels v. USAgencies Cas. Ins. Co., 2011-1357 (La. App. 1 Cir. 5/3/12), 92 So.3d 1049, 1055. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) the actual damages (the damage element). Daniels , 92 So.3d at 1055. A negative answer to any of the elements prompts a no-liability determination. Id.
After the motion for summary judgment hearing, Ms. Crockerham filed her opposition to the motion for summary judgment and attached a document which she obtained from Woman's Hospital in response to requests for production of documents entitled "Privileges for Woman's Hospital da Vinci Surgical System." We agree with Woman's Hospital that this court cannot rely on the aforementioned document as it was untimely and appropriately not considered by the trial court. The trial court can consider only those documents filed in support of or in opposition to the motion for summary judgment. La. C.C.P. art. 966(D)(2). Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with La. C.C.P. art. 1313 not less than fifteen days prior to the hearing on the motion. La. C.C.P. art. 966(B)(2). The court of appeal is not a court of original jurisdiction, and cannot receive new evidence or exhibits.
*609 Guilbeau v. Custom Homes by Jim Russell, Inc., 2006-0050 (La. App. 1 Cir. 11/3/06), 950 So.2d 732, 735. We are permitted to review only the evidence that was before the trial court.
Attached to the motion for summary judgment were the depositions of Dr. Dickerson and Dr. Wheeler. With regard to credentialing, Dr. Dickerson testified that he underwent a day-long course in New Orleans where the robotic procedure was performed on pigs. He turned in his course certificate which was approved by Woman's Hospital, and he was granted privileges to conduct the robotic procedure as long as a proctor, who already had privileges, was present in his first three surgeries. Dr. Dickerson admitted that the surgery on Ms. Crockerham was his first robotic hysterectomy. He also stated that he did not observe any robotic-assisted laparoscopic hysterectomies before Ms. Crockerham's surgery, and he was unaware if such observation was a requirement for privileges.
While the Privileges for Woman's Hospital da Vinci Surgical System document was not before the trial court, Dr. Wheeler's testimony regarding the document was clearly before the court. Dr. Wheeler testified that he had read the credentialing requirements of Woman's Hospital, and he could not believe that Dr. Dickerson was allowed to perform the robotic procedure on Ms. Crockerham. Dr. Wheeler explained that Dr. Dickerson was unqualified to perform the robotic procedure because the only evidence available was that Dr. Dickerson completed the course in New Orleans and the certificate stated that it did not substitute for any other training. Dr. Wheeler further testified that there was no evidence that Dr. Dickerson observed a robotic procedure on a human prior to Ms. Crockerham's surgery. When specifically asked what criticisms he had of Woman's Hospital, he stated:
Credentials, that would include Dr. Dickerson. And I don't know, in addition to the labs he's done, he was supposed to have observed at least one case, right? So I don't know if your stipulation included that observation period. But the hospital is required to make sure that [the] surgeon is qualified.
Dr. Wheeler is referring to a hypothetical given him previously, which Woman's Hospital relies upon in this court. Counsel for Woman's Hospital asked the following:
Q. So if I were to tell you or ask you to assume that he met the requirements of the privileges for Woman's Hospital, that are also included here, which I'll show you, ... do you believe that those requirements, as described there, are adequate for credentialing for the robotic privileges?
* * *
A. And your question is would I consider this adequate?
Q. Assuming that he met all the requirements of that document that apply to him, yes.
A. Then I would have to testify he satisfied the requirements of Woman's Hospital.
Q. Okay. Do you believe that the requirements of Woman's Hospital are adequate?
A. I can't attest to that, unless I was more knowledgeable of the details. For example, if each-if the animal lab was fifteen minutes. You know, I would have to know more details about each of these. I could certainly say potentially, if these were well-conducted courses, this would be satisfactory. But I need to know more details.
Dr. Wheeler also offered the following exchange:
Q. If Dr. Dickerson had not officially witnessed an entire [robotic] procedure *610 on a human being, would he have had the credentials to enable him to participate in a proctored-as a proctored surgeon?
A. No. Because it says right here, it says, "must observe at least one case."
Q. And if the hospital had let him operate, and he had not indeed seen a complete procedure on a human, a complete [robotic] procedure on a human being, in your opinion would they have deviated from the standard of care?
* * *
A. Yes. I do feel that they would have deviated from the standard of care in general and from the hospital's privileges specifically.
Q. ... So would it be fair to say that they did not enforce their own credentialing?
A. That would be a conclusion that would be reasonable.
(Emphasis added).
Woman's Hospital claims that the deposition of Dr. Dickerson establishes a prima facie case that he was properly credentialed to perform the surgery, thereby shifting the burden to Ms. Crockerham to show the credentialing standard required by the hospital that Dr. Dickerson failed to meet. Woman's Hospital also claims that Ms. Crockerham's only expert did not have enough knowledge to know Dr. Dickerson's credentials or if Woman's Hospital's credentialing requirements were adequate.
We disagree with Woman's Hospital's characterization of the above testimony. Dr. Wheeler testified that Dr. Dickerson was required by Woman's Hospital to observe a human case using the robotic procedure, Dr. Dickerson clearly testified that he did not do so. The hypothetical question posed by Woman's Hospital asked Dr. Wheeler to assume that Dr. Dickerson met the qualifications. Dr. Wheeler pointed out that the hypothetical did not include the observation period. Ms. Crockerham has alleged that Woman's Hospital was negligent in "[a]llowing Dr. Dickerson to operate without proper credentials or by extending credentials [to] operate in violation of the hospital[']s own procedures and bylaws, etc." The issue is not just whether Woman's Hospital's credentialing requirements were adequate, but also whether Dr. Dickerson operated in violation of those requirements. The testimony of Dr. Wheeler is sufficient to raise a genuine issue of material fact as to whether Woman's Hospital violated its own credentialing requirements in not requiring Dr. Dickerson to observe at least one human surgery using the robotic procedure before he was permitted to perform the surgery.
Woman's Hospital also claims that Dr. Wheeler was not qualified to testify regarding the procedure because he had never performed the procedure and had never been credentialed in a robotic procedure. The appellate court is not the proper place to challenge the qualifications of an expert.
In the present case, Woman's Hospital submitted the depositions of both Dr. Dickerson and Dr. Wheeler. The deposition of Dr. Wheeler includes a discussion of his qualifications. At no time did Woman's Hospital properly challenge Dr. Wheeler's qualifications or submit an affidavit from a countervailing expert indicating that Dr. Wheeler was unqualified to give an opinion in this matter. In fact, as stated earlier, it was Woman's Hospital that submitted Dr. Wheeler's testimony in this matter. Any challenge to the qualifications or methodology of the plaintiff's expert should be filed in a pre-trial motion in accordance with La. C.C.P. art. 1425(F).
*611 Louisiana Code of Civil Procedure article 1425(F) sets out in detail the procedure which should be followed in order to challenge the qualifications of an expert or the methodology used by the expert in reaching his opinion. Adolph v. Lighthouse Prop. Ins. Corp., 2016-1275 (La. App. 1 Cir. 9/8/17), 227 So.3d 316, 320, citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ; Cheairs v. State ex rel. Department of Transportation & Development, 2003-0680 (La. 12/3/03), 861 So.2d 536, 541.
There is nothing in the record indicating that Woman's Hospital challenged the qualifications of Dr. Wheeler at the trial court level or that the trial court held a Daubert hearing. The law is well settled that the trial court cannot make credibility determinations, evaluate testimony, or weigh conflicting evidence in making its decision whether to grant or deny a motion for summary judgment. Pumphrey v. Harris, 2012-0405 (La. App. 1 Cir. 11/2/12), 111 So.3d 86, 91. Simply claiming that an expert is not qualified without any facts or competing expert opinion is insufficient to withstand summary judgment. Adolph , 227 So.3d at 321, citing Hayne v. Woodridge Condominiums, Inc., 2006-923 (La. App. 5 Cir. 4/11/07), 957 So.2d 804, 809.
Because the trial court was presented with the testimony of Dr. Dickerson that he met the credentials of Woman's Hospital and the testimony of Dr. Wheeler that Dr. Dickerson did not meet those credentials, the trial court must have weighed the credibility of one witness or favored certain evidence over another, which is disallowed in a motion for summary judgment. See Hutchinson v. Knights of Columbus, Council No. 5747, 2003-1533 (La. 2/20/04), 866 So.2d 228, 234. In our review of the trial court's action, we simply cannot say as a matter of law, that there are no genuine issues of material fact as to whether Dr. Dickerson met the necessary credential requirement to perform the procedure in question.[6]
Informed Consent
Ms. Crockerham also alleged in her petition that Woman's Hospital failed to obtain informed consent from her, since Dr. Dickerson did not disclose that he had never operated, nor seen a laparoscopic hysterectomy using the robotic procedure, on a live human being.[7] Woman's Hospital asserts that the duty of obtaining informed consent from a patient is owed by the physician or health care provider who will actually be performing the contemplated medical or surgical procedure. Phillips v. State ex rel. LSU Medical Center , 2008-1411 (La. App. 3 Cir. 4/15/09), 9 So.3d 1080, 1083. (Appellant Brief at p. 12). At the time of Ms. Crockerham's surgery in *612 2009, La. R.S. 40:1299.40(E)(7)(c) (currently La. R.S. 40:1157.2(P) ) provided that in order to be covered by the statutory provisions relative to informed consent, "the physician or other health care provider who will actually perform the contemplated medical or surgical procedure" must make the required disclosures. Therefore, the statute expressly places the duty of obtaining the informed consent of a patient on the physician or health care provider who will actually be performing the procedure. Phillips , 9 So.3d at 1083. The hospital has no duty to inform the patient of the risks associated with the surgery. Mohsan v. Roule-Graham, 2005-122 (La. App. 5 Cir. 6/28/05), 907 So.2d 804, 806, writ denied, 2005-1976 (La. 2/3/06), 922 So.2d 1184, citing Kelley v. Kitahama, 95-45 (La. App. 5 Cir. 5/15/96), 675 So.2d 1181, 1183, writ denied , 1996-1555 (La. 9/27/96), 679 So.2d 1352.
At the trial court level, Woman's Hospital relied upon Hondroulis v. Schuhmacher , 553 So.2d 398, 411-12 (La. 1988) (on rehearing), asserting that the case held that physicians, not hospitals, are required to obtain informed consent. The trial court appeared to rely upon this case stating in its reasons:
And with the exception of Dr. Wheeler's opinion, which is contrary to the supreme court as to who is responsible for informed consent, that doesn't seem to be any real issue of material fact and I'll grant summary judgment on behalf of Woman's [Hospital].
Ms. Crockerham has pointed to no cases which require a hospital, rather than the physician performing the procedure, to obtain informed consent from a patient. She argues on appeal that the deposition of Dr. Wheeler, who testified that Woman's Hospital failed to follow the standard of care with regard to the issue of consent is sufficient to create a genuine issue of material fact. We agree with Woman's Hospital that Dr. Wheeler's testimony that there was a joint duty to inform the patient on the part of the treating physician and the hospital does not alter Louisiana's substantive law placing that duty on the physician who performs the procedure. While the court must consider the deposition of Dr. Wheeler, it is not bound to follow the conclusions of law which are contained therein. La. C.C.P. art. 966 (D)(2) ; see Thompson v. Center for Pediatric and Adolescent Medicine, LLC, 2017-1088 (La. App. 1 Cir. 3/15/18), --- So.3d ----, 2018 WL 1324414 ; see also Thompson v. S. Cent. Bell Tel. Co., 411 So.2d 26, 28 (La. 1982).
The testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. Wilson v. Wilson, 542 So.2d 568, 573 (La. App. 1 Cir. 1989). It is well established that expert witnesses may not provide opinions regarding domestic law, as distinguished from foreign law, on the theory that the court itself is the expert on domestic law. The district court itself is an expert on domestic law, including matters of statutory interpretation. Crowe v. Bio-Medical Application of Louisiana, LLC, 2014-0917 (La. App. 1 Cir. 6/3/16), 208 So.3d 473, 482-83, writ denied , 2017-0502 (La. 5/12/17), 219 So.3d 1106. Accordingly, the opinion of Dr. Wheeler as to the legal duty to obtain informed consent from the patient would not assist the trial court, and thus, we find that the trial court did not err in disregarding this portion of his testimony.
A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in *613 favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. La. C.C.P. art. 966(E). Therefore, a partial summary judgment should have been granted with respect to the issue of informed consent, dismissing those claims.
There are genuine issues of material fact as to whether Woman's Hospital negligently credentialed Dr. Dickerson to perform the robotic procedure. There are no genuine issues of material fact as to whether Woman's Hospital breached the standard of care in obtaining informed consent. We must reverse the trial court's granting of the summary judgment, in part, and affirm the trial court's granting of summary judgment, in part. Therefore, we amend the judgment of the trial court to be a partial summary judgment.
CONCLUSION
For the above and foregoing reasons, the March 20, 2017 judgment granting summary judgment on behalf of Woman's Hospital Foundation and dismissing the claims of Cherlyn Denise Crockerham is amended to affirm the summary judgment granted as to the claim of informed consent and reversed as to the claim of negligent credentialing. All costs of this appeal are assessed equally against Cherlyn Denise Crockerham and Woman's Hospital Foundation.
SUMMARY JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED, IN PART, AND REVERSED, IN PART.

The record shows that since the filing of this lawsuit, Ms. Crockerham married and her last name is currently Rainey. We will refer to her in this opinion as Ms. Crockerham, as that is how she is referenced throughout the record.

See La. R.S. 40:1299.39 et seq. re-designated as La. R.S. 40:1237.1 et seq. and La. R.S. 40:1299.41 et seq. re-designated as La. R.S. 40:1231.1 et seq. by La. H.C.R. No. 84 of the 2015 Regular Session.

Paragraph 5 of Mr. Abadie's affidavit appears to be incomplete. However, the complete Medical Review Panel opinion and oaths of the panelists were attached to the motion for summary judgment and no objection was made thereto.

This second notice resetting the motion for summary judgment hearing is not contained in the record.

Louisiana Code of Civil Procedure Article 966 was amended by Acts 2015, No. 422, and was effective January 1, 2016, so the amendment applies in this case since the motion for summary judgment was filed on November 28, 2016.

As we find the deposition of Dr. Wheeler raised a genuine issue of material fact in connection with the negligent credentialing claim, precluding summary judgment in connection therewith, we need not address Ms. Crockerham's argument that the Medical Review Panel opinion in and of itself created a genuine issue of material fact.

The first two allegations against Woman's Hospital contained in the petition pertain to negligent credentialing. The third allegation states that Woman's Hospital "[failed] to advise or warn, or make sure that [Ms.] Crockerham knew that Dr. Dickerson had never used the Robotic Device on a patient before." We believe that this third allegation is encompassed in, and a part of, the fourth allegation, which alleges Woman's Hospital "[failed] to obtain informed consent because he did not disclose that he had never operated, nor seen a laparoscopic hysterectomy using the DaVinci Device, on a live human being prior to the attempted hysterectomy on Ms. Crockerham. Had she been fully informed, she would never have consented to surgery and would not have suffered complicated ureteral injury." Although, Ms. Crockerham makes this allegation against Woman's Hospital, she refers to Dr. Dickerson's failure to obtain informed consent.