# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

## 2019 CA 0723

## HAYNES INTERESTS, LLC; COS INVESTMENT GROUP, LLC; BLUE BAYOU WATER PARK, LLC; DIXIE LANDIN, LLC

### VERSUS

## GARNEY COMPANIES, INC. D/B/A GARNEY CONSTRUCTION AND THE EAST BATON ROUGE SEWERAGE COMMISSION

### C/W

## 2019 CA 0724

## HAYNES INTERESTS, LLC; COS INVESTMENT GROUP, LLC; BLUE BAYOU WATER PARK, LLC; DIXIE LANDIN, LLC

### VERSUS

## GARNEY COMPANIES, INC. D/B/A GARNEY CONSTRUCTION AND THE EAST BATON ROUGE SEWERAGE COMMISSION

Judgment rendered: **FEB 2 6 2021**

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. 631967, Sec. 22

The Honorable Timothy E. Kelley, Judge Presiding

| | |
|---|---|
| J.R. Whaley<br>Benjamin H. Dampf<br>Baton Rouge, LA | Attorneys for Plaintiffs/Appellants<br>Haynes Interests, LLC; COS<br>Investment Group, LLC; Blue Bayou<br>Water Park, LLC and Dixie Landing<br>Amusement Park, LLC |
| Mark E. Van Horn<br>New Orleans, LA | Attorney for Defendant/Appellee<br>Garney Companies, Inc. D/B/A<br>Garney Construction |

_PMc_ _by CH_, Concurs

Michael P. Schillage
Baton Rouge, LA

Attorney for Defendant/Appellee
The East Baton Rouge Sewerage
Commission

**BEFORE: McCLENDON, HOLDRIDGE, AND LANIER, JJ.**

2

**HOLDRIDGE, J.**

Plaintiffs, Haynes Interests, LLC (Haynes), COS Investment Group, LLC (COS), Blue Bayou Water Park, LLC, and Dixie Landin, LLC (sometimes collectively referred to as "Haynes"), appeal summary judgments rendered in favor of defendants, Garney Companies, Inc. d/b/a Garney Construction (Garney) and the East Baton Rouge Sewerage Commission (Commission), and dismissing their lawsuits with prejudice. We affirm the summary judgment rendered in favor of the Commission, reverse the summary judgment rendered in favor of Garney, and remand.

## BACKGROUND

In 2013, the City of Baton Rouge/Parish of Baton Rouge (City/Parish) contracted with Garney to serve as the general contractor on various sewer improvement projects under the direction of the Commission, the owner of the projects. The rehabilitation project involved constructing and improving sewer lines along or near Highland Road in Baton Rouge, Louisiana (sometimes referred to as "the Project"). The various Haynes' interests own 125 acres of property on both sides of Highland Road, generally bounded by Highland Road, Interstate 10, and Barringer Foreman Road. COS owns acreage abutting and adjoining the 125 acres. Haynes also owns Blue Bayou Water Park and Dixie Landin, which are situated along Highland Road. In August of 2013, in connection with the Project, COS and the Commission entered into a written servitude agreement pursuant to which COS granted the Commission sewer and temporary construction servitudes over certain property.

On July 11, 2014, Haynes filed this lawsuit against Garney and the Commission seeking to recover damages for value of items that were taken from its property during the construction of the sewer improvements. Haynes also

2

sought to recover damages against Garney and the Commission for the alleged breach of a lease agreement, contract, and/or the servitude agreement.

In the petition, Haynes made the following allegations: In order to perform its work on the Project, Garney needed to access certain areas of Haynes' property, and Garney entered into an oral agreement with Haynes for that purpose. This oral agreement permitted Garney access to and over certain property and also allowed Garney to use Haynes' property for the temporary storage of equipment, materials, and vehicles relating to Garney's work on the Project. In exchange for the use of Haynes' property, Garney agreed to compensate Haynes with fill dirt generated by the Project. During the course of Garney's work, and as a condition for the use of Haynes' property, Haynes instructed the Commission and Garney to ensure the property was secured. Specifically, Garney and the Commission were instructed to block an access road with concrete barriers (which were owned and used by Haynes to block the road at all other times) each night when Garney left the property, as the access road led directly from Barringer Foreman Road onto Haynes property. Haynes stored materials and equipment on the property Garney had access to, and Garney and the Commission were informed that securing the access road was important to prevent trespass or other illegal activity on Haynes' property.

According to Haynes, from late December 2013 to early January 2014, items owned by Haynes and located on the property were stolen including, but not limited to, large pumps, aluminum bleachers, aluminum piping, crushed concrete, and limestone. Haynes alleged that the thieves used Garney's utility equipment to remove crushed concrete and limestone, as well as other items, from Haynes' property. Haynes maintained that the use of Garney's equipment to achieve the thefts was possible because Garney failed to secure its equipment and because

3

security codes on the equipment, disabling the equipment from use by an unauthorized user, were not enabled at the time of the thefts. Haynes also alleged that the thefts occurred because of Garney and the Commission's failure to secure the access road.

Haynes asserted negligence and vicarious liability causes of action against Garney and the Commission pursuant to articles 2315, 2316, and 2320 of the Louisiana Civil Code. According to Haynes, the fault of Garney and the Commission arose from the fact that the thefts occurred while the property was under their control and because both Garney and the Commission failed to do what reasonable entities in their position would have done despite Haynes' specific instructions on the steps that should be taken to secure Haynes' property.

Haynes alleged that Garney owed it a duty to use reasonable care while on its property, including the duty to secure the property, to follow Haynes' instructions on securing Haynes' property, and to secure its own utility equipment. Haynes averred that Garney breached all of these duties and that Garney's actions were the cause-in-fact of its injuries. Haynes also asserted causes of action against Garney for breach of the lease agreement and trespass. With respect to these claims, Haynes alleged that Garney and Haynes had a viable oral lease agreement regarding Garney's use of Haynes' property, that Garney used the property for a purpose other than for which it was leased, entitling Haynes to damages pursuant to La. Civ. Code art. 2868, and that Garney used more of Haynes' property than was contemplated by their agreement.

In the petition, Haynes asserted breach of contract claims against the Commission, submitting that in addition to the terms of the servitude agreement, Haynes specifically informed the Commission of the need for appropriate security. Haynes urged that the Commission's failure to abide by the terms of the servitude

4

agreement and the terms of oral communications constituted a breach of the lease, contract and/or servitude.

On April 24, 2018, Garney filed a motion for summary judgment in which it argued that there was no enforceable oral lease between Haynes and Garney because their agreement lacked a certain or determinable price as required by Louisiana lease law. Garney further maintained that even if there was a valid and enforceable lease, Garney, as a lessee, owed no legal duty to protect Haynes or its property from third-party theft. Thus, Garney submitted that Haynes could not establish the duty element of its negligence claim, entitling Garney to judgment as a matter of law. Garney and Haynes filed documentary evidence supporting and opposing the motion for summary judgment.

On August 20, 2018, the Commission filed its motion for summary judgment, in which it argued that it could not be held vicariously liable for any actions or inactions on Garney's part because: (1) Garney was an independent contractor on the Project, and (2) Garney was not guilty of negligence to which vicarious liability could attach. Further, the Commission insisted that it did not breach the servitude agreement executed between COS and the Commission, the only party with whom the Commission had a contract, because the servitude agreement did not require the Commission to provide security. Further, the Commission urged, there was no evidence to suggest that any other written or oral agreement existed between the parties that would obligate the Commission to secure Haynes' property. To the contrary, the Commission pointed out that there was evidence demonstrating that Haynes attempted to gain security measures as part of the servitude agreement and the City/Parish denied that request. Lastly, the Commission argued that if there was any claim for trespass asserted against it by

5

Haynes, any such claim for damages had been specifically waived by the clear terms of the servitude agreement.

A hearing on the motions for summary judgment was held on November 5, 2018. As to Garney's motion, the trial court did not decide whether there was a valid and enforceable lease between the parties. Instead, the court ruled that even if there was a valid lease agreement between Haynes and Garney, Louisiana law did not impose a duty on a Garney to protect Haynes' from the criminal acts of third parties in the absence of a history or any facts to put the lessee on notice. In this case, the court noted, there was no evidence showing a history of criminal activity on Haynes' property. The court concluded that Garney did everything reasonable to protect the property, including locking the back gate and locking its machinery, and found that Haynes failed to offer evidence opposing the attestations of Garney's affidavits.

As to the Commission's motion for summary judgment, the court first ruled that the Commission could not be held vicariously liable for Garney's conduct because Garney was an independent contractor. The court then found any duties imposed by the Louisiana Civil Code upon the Commission, as the holder of a predial servitude, did not extend to protect the landowner, Haynes, against criminal activities of third persons. Finding no basis in the law upon which liability of the Commission could attach, the trial court granted the Commission's motion for summary judgment.

This appeal, taken by Haynes, contesting the granting of both motions for summary judgment, followed.[1]

---

[1] The appeals were filed separately in this court; Haynes filed a motion to consolidate the appeals. By order dated December 4, 2019, this court consolidated the appeal filed and docketed as 2019-0724 with the appeal docketed as 2019-0723.

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 21, <u>writ denied</u>, 2018-1397 (La. 12/3/18), 257 So.3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966A(3). In reviewing a trial court's ruling on a motion for summary judgment, an appellate court reviews the evidence *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **Smith v. Our Lady of the Lake Hospital, Inc.**, 93-2512 (La. 7/5/94), 639 So.2d 730, 750.

The Code of Civil Procedure places the initial burden of proof on the party filing the motion for summary judgment. La. C.C.P. art. 966D(1). If the mover will not bear the burden of proof at trial on the issue raised in the motion for summary judgment, the mover is not required to negate all essential elements of the adverse party's claim, action, or defense. La. C.C.P. 966D(1). However, the mover must demonstrate the absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.P. art. 966D(1). The mover can meet this burden by filing supporting documentary evidence with its motion for summary judgment, consisting of pleadings, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. La. C.C.P. art. 966A(4). The mover's supporting documentary evidence must be sufficient to prove the essential facts necessary to carry the mover's burden. Thus, in deciding a motion for summary judgment, it

7

must first be determined whether the supporting documents presented by the mover are sufficient to resolve all material factual issues. If not, summary judgment must be denied in favor of a trial on the merits. **Jenkins v. Hernandez**, 2019-0874 (La. App. 1ˢᵗ Cir. 6/3/20) 2020 WL 2898123, ___ So.3d. ___, ___; **Crockerham v. Louisiana Medical Mutual Insurance Company**, 2017-1590 (La. App. 1ˢᵗ Cir. 6/21/18), 255 So.3d 604, 608.

Once a motion for summary judgment is made and properly supported, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, La. C.C.P. art. 966D(1) mandates the granting of the motion for summary judgment. **Babin v. Winn Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40; **Jenkins**, ___ So.3d at ___.

Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Crockerham**, 255 So.3d at 607. Because it is the substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Georgia-Pacific Consumer Operations, LLC**, 255 So.3d at 22.

*Garney's Motion for Summary Judgment*

In its petition, Haynes sought to hold Garney liable for thefts occurring on its property from late December 2013 through January 2014. Haynes asserted that it had an oral lease agreement with Garney, which granted Garney access to and passage over its property in exchange for Garney's agreement to provide Haynes

8

with fill dirt generated on the property. Haynes claimed that as a condition for the use of its property, Garney was instructed to secure the property, including blocking an access road with concrete barriers owned by Haynes prior to leaving the site each night, and that Garney was informed that securing the access road was important to prevent trespass and other illegal activity on the property. Haynes theorized that the thieves used heavy equipment Garney left on Haynes' property to carry out the thefts, and urged that those thefts were made possible because Garney failed to secure its own equipment from use by the thieves and failed to block the access road with the concrete barriers prior to leaving the site.

According to the allegations of Haynes' petition, Garney owed Haynes three duties: to secure the property, to follow Haynes' instructions on securing the property; and to secure its own equipment located on Haynes' property. Haynes alleged that Garney breached all of these duties and its breach of those duties was a cause-in-fact of Haynes' injuries resulting from the theft of its property.

Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles as set forth in the Civil Code. **Crockerham**, 255 So.3d at 608. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform its conduct to a specific standard (the duty element); (2) the defendant failed to conform its conduct to the appropriate standard of care (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause in fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element; and (5) actual damages (the damages element). **Id.**

In its motion for summary judgment, Garney challenged the ability of Haynes to prove that it had an oral lease with Garney and also Haynes' ability to

9

establish liability, particularly, that Garney owed Haynes a duty to protect it from the criminal acts of third parties. Garney supported the motion with six exhibits, including an aerial photograph of the area in question, the August 30, 2013 servitude agreement executed between COS and the Commission, two affidavits, and excerpts of two depositions.

In his affidavit, Christopher Coston, Garney's Project Manager assigned to the Project from October 2013 through January 2016, and who supervised Garney's crews and subcontractors working on the Project, made the following attestations: In October of 2013, Mr. Coston was scouting the area around the Project site for a laydown yard and met with Mr. Haynes, who represented himself as the owner of Blue Bayou Water Park and the property behind a Home Depot located across Highland Road from the water park. Mr. Haynes agreed to allow Garney to use the water park's overflow parking lot, an unpaved area located behind the paved Home Depot parking lot, for a laydown yard and to park its temporary office trailer during the Project. In return for using the property, Garney agreed to provide Mr. Haynes with the excess haul-off dirt and mud generated by the project, although no specific amount of haul off dirt or drill mud was promised by Garney to occupy the property. Mr. Haynes instructed Mr. Coston where to dump the fill dirt and where he wanted the temporary office placed. Mr. Coston admitted there was an oral "handshake" agreement between himself, on behalf of Garney, and Mr. Haynes regarding Garney's use of the property, but denied that the agreement was ever reduced to writing. Mr. Coston also denied entering into any oral or written agreement on Garney's behalf with the four named plaintiffs in this litigation.

Continuing, Mr. Coston made the following attestations: in connection with the Project, Garney leased certain heavy equipment including a John Deere 544

Front Wheel Loader and a John Deere 323 Skid Steer, which were used by Garney personnel on the Project in early January 2014 to move and unload pipe fittings, trench boxes, aggregate, and dirt along the right-of-way beside the railroad. These machines were equipped with a "universal" key, meaning that anyone with a John Deere key could operate the equipment. Garney equipment operators kept a John Deere heavy equipment key on their personal key chains and a separate John Deere key was locked in the office trailer at all times. Garney's practice was to lock out the John Deere equipment each day prior to departing the Project site.

Mr. Coston attested that Garney and its subcontractors left the Project site on Friday, December 20, 2013, for the Christmas and New Year's holidays and returned to Baton Rouge on January 2, 2014. Garney personnel returned to work on January 6, 2014, and worked Monday through Saturday for the next two weeks. On January 16, 2014, Mr. Coston received a call from Mr. Haynes, who told him that items stored in semi-trailers located on its property had been taken. According to Mr. Coston, the majority of Haynes' semi-trailers were located in a field adjacent to the railroad right of way, approximately one-half mile from the laydown yard used by Garney; some were located near the overflow parking lot, and the majority of them were unsecured and were missing locks and rear doors. Mr. Haynes informed Mr. Coston that he believed Garney's John Deere equipment had been used by the alleged thieves to move the concrete barriers across Old Perkins Road in order to remove the items from the semi-trailers. Mr. Coston stated that at no time did Mr. Haynes, or anyone else, advise Garney that there had been prior thefts or other criminal activities involving the semi-trailers, the contents, or the property.

In his affidavit, Michael Hall, Garney's senior superintendent who personally supervised Garney's personnel working on the Project, added that

11

beginning in December 2013, Garney personnel were required to access the railroad right-of-way north of Old Perkins Road in connection with the Project. Garney personnel accessed the area north of the railroad right-of-way utilizing a dirt road that ran along Interstate 10 and cut across the property to the bore site. Mr. Hall attested that the John Deere equipment was locked out by Garney personnel each day prior to departing the Project site. Mr. Hall's remaining attestations essentially echoed those of Mr. Coston.

Mr. Haynes testified that the water park was not open during the time the thefts occurred and that the trailers were located on the back lot of the property. He stated that he and Mr. Coston met to discuss Garney's access to his property, during which they discussed using the overflow parking lot behind a paved parking lot for a laydown yard, the location of Garney's temporary office, and keeping the property secure. According to Mr. Haynes, he was to receive 6,000 cubic yards of dirt as payment, which was an estimate according to an engineer, and he and Mr. Coston had a "handshake" agreement that was never reduced to writing. When questioned whether, prior to the incident sued upon, there had ever been any vandalism in the back lot or overflow parking area, Mr. Haynes responded that once teenagers from the neighborhood tried to get into the trailers and threw items around and someone stole electric wiring out of the trailers. He acknowledged that some of the trailers on his property have locks on them, while others do not, and even before the thefts, some of the trailers did not have doors. Mr. Haynes indicated his belief that Garney personnel were on site at the time of the thefts, although he had been told they left the site for the Christmas and New Year's holidays.

Mr. Densmore, Blue Bayou Water Park's manager, was asked about his understanding of the agreement between Mr. Haynes and Garney regarding

12

Garney's use of Haynes' property for the Project. He could not recall a specific amount of dirt being agreed upon, and indicated that Garney would provide Haynes with whatever dirt was left that was not being used on the Project. Mr. Densmore stated that Garney was instructed to deposit the dirt near the Home Depot property.

While discussing the area in back area of the property where the bleachers were located, Mr. Densmore noted that this area was fenced and gated, with concrete barriers blocking the back entrance to the park, in front of which there was a gate across a shell road adjacent to the railroad track and a gate towards the concrete barriers. He noted that there had been no prior vandalism in that part of the property.

Mr. Densmore recalled having a conversation with Mr. Coston in early December 2013, during which Mr. Coston asked to open up the blocks to access the property. Mr. Densmore stated they spoke about keeping the Haynes' property secured, which entailed putting the concrete blocks in every night. After the thefts, it was discovered that the gates blocking the entrance to the back part of the property had been removed. However, the gates securing the entrance to the property from behind Home Depot were secure, closed, and locked the entire time.

In the Servitude Agreement executed between COS and the Commission, COS granted the Commission a temporary construction servitude on certain parcels of land during the sewer improvement project. Therein, COS agreed to hold harmless and indemnify the Commission from and against any adverse claims.

In opposition to the motion for summary judgment, Haynes offered documentary evidence consisting of a copy of the petition, excerpts of the deposition testimony of Mr. Haynes and Mr. Densmore, and Garney's responses to

13

interrogatories propounded by Haynes. In his deposition, Mr. Haynes testified that all of its trailers were on the back lot of the property, and two sets of aluminum bleachers with 5500 and 500 seats, respectively, were in storage on the property. He stated that before Garney arrived on his property, Mr. Densmore was responsible for the gates and barriers on Haynes' properties and that Mr. Coston assured him that Garney would take care of this.

Mr. Densmore testified that the sewer line went through the gates on the back of Haynes' property, which was fenced and gated. He stated that Garney requested to move the three concrete barriers to gain access to the property, each which weighed approximately 8,000 pounds, to get to the back of the property. Mr. Desmond indicated that Haynes insisted that the road be closed back up every night, and Garney took care of moving the blocks to let its personnel in and out of the property. He also noted that the gates also had to be taken down to give Garney access to the property.

Lastly, in Garney's responses to Haynes' interrogatories, Garney revealed that no statements had been taken in connection with Garney's use of the property, the securing of Haynes' property, or securing the property and utility equipment belonging to or found on Haynes' property. Garney further denied that it entered into any lease agreement as defined by the Louisiana Civil Code with Garney.

Garney argues that the trial court correctly held that even if there was an oral lease between Haynes and Garney, summary judgment is proper under Louisiana law because Garney owed no legal duty to protect Haynes against the criminal acts of a third party. It submits that a narrow exception to this rule, which provides that a business may owe a duty to protect others from criminal activity where a "high degree of foreseeability" exists, such as where the business owner possesses actual knowledge of an impending criminal act or there is an ongoing pattern of criminal

14

activity in the area does not apply to Garney. Garney insists that the trial court correctly ruled that its personnel acted reasonably to protect Haynes' property, that Garney demonstrated that it did everything it agreed to do, and Haynes' baseless supposition about what Garney did or did not do failed to create a genuine issue of material fact.

Haynes argues that regardless of whether there was a valid lease agreement, Garney owed it a duty to secure the property and protect against the thefts occurring thereon because it was foreseeable and anticipated. It also maintains that there are genuine issues of material facts as to whether Garney assumed the duty to protect Haynes' property from theft and was negligent in failing to secure the property or by failing to secure its equipment, which enabled the theft. It insists that Garney knew that the property needed to be secured because of discussions with Mr. Haynes and Mr. Densmore regarding the need for and the importance of keeping the property secure. It posits that at a bare minimum, there are genuine issues of material fact regarding whether Garney owed Haynes that duty, thereby precluding summary judgment in favor of Garney. We agree.

The threshold issue in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. **Bezet v. Original Library Joe's, Inc.**, 2001-1586 (La. App. 1st Cir. 11/8/02), 838 So.2d 796, 800. Whether a duty is owed is a question of law, which involves a determination of whether the duty the defendant allegedly breached extends to the risk of harm suffered by the plaintiff. **Id.** A defendant's duty may arise out of a legal or conventional relationship with the plaintiff. **Peacock's, Inc. v. Shreveport Alarm Co.**, 510 So.2d 387, 397 (La. App. 2nd Cir.), writs denied, 513 So.2d 826, 827, 828 (La. 1987). The determination of whether a duty exists as a result of the relationship between the parties must be made on a case by case basis. **Id.**

15

Under Louisiana law, there is generally no legal duty to protect others from the criminal activities of third persons. **Posecai v. Wal-Mart Stores, Inc.**, 99-1222 (La. 11/30/99), 752 So.2d 762, 766. However, there are exceptions to this general rule recognized by the jurisprudence. For instance, in determining whether business owner owes a duty to protect its customers from criminal activities occurring on its premises, the Louisiana Supreme Court has adopted a balancing test, directing courts to balance the foreseeability of the crime risk on the defendant's property and the gravity of the risk to determine the existence and extent of the defendant's duty. **Posecai**, 752 So.2d at 768. The greater the foreseeability and gravity of harm, the greater the duty of care that will be imposed on the business. **Id**. Furthermore, a business may voluntarily assume a duty to protect others against the risk of criminal activity, and when it does so, it must perform that protection with reasonable care. In such a situation, liability may be created by a negligent breach of that duty. **Harris v. Pizza Hut of Louisiana, Inc.**, 455 So.2d 1364, 1371-72 (La. 1984).

At a trial on the merits, Haynes has the burden of establishing Garney owed it a duty of protection against criminal acts of theft of its property under the circumstances of this case. See **Posecai**, 752 So.2d at 768. On the motion for summary judgment, Garney attacked Haynes' ability to prove the existence of an enforceable oral lease agreement and Haynes' ability to establish the duty element of its negligence claim. As the mover, Garney was required, by the use of proper documentary evidence, to resolve all material issues of fact.

The essential elements of a lease are the thing, price, and consent of the parties. La. Civ. Code art. 2676. Garney concedes it had an oral, "handshake" agreement with Haynes to access and occupy Haynes' property to perform its work on the sewer project. However, it contends that the agreement did not constitute a

valid and enforceable lease because the oral agreement lacked a certain or determinable price as required by law. The summary judgment evidence demonstrates that Garney promised to give Haynes fill dirt in exchange for access to Haynes' property for its work on the Project. Garney claims no specific amount of fill dirt and mud generated by the Project was agreed upon; however, Haynes claims that the Garney agreed to provide Haynes with 6,000 cubic yards of fill dirt, an amount estimated by the Project engineer. In order to be entitled to summary judgment on the issue of the existence of an enforceable lease agreement, Garney had to resolve the factual issue of whether there was an oral lease agreement between the parties and if so, what were the terms of that agreement. The disagreement between the parties over the existence of an enforceable lease agreement and the terms thereof by its very nature creates genuine issues of fact, precluding summary judgment thereon.

Further, even if Garney was able to demonstrate at trial that it did not have an enforceable lease agreement with Haynes, it is clear from the evidence on the motion for summary judgment that there was an oral agreement between the parties. Particularly, the evidence demonstrates that Garney, Mr. Haynes, and Mr. Densmore discussed granting Garney access to the back portion of Haynes' property, which had been heavily secured with gates and concrete barriers to block vehicular access to this area. There is also evidence showing that Garney agreed to secure the property by putting the three 8,000-pound concrete barriers back in place each time it left the property.

The documentary evidence that was provided in favor of and in opposition to the motion for summary judgment contains issues of fact as to whether the request by Haynes for Garney to secure its property was part of that oral agreement between the parties. Neither Garney nor the trial court were able to define the

17

terms of the oral agreement. If the security of Haynes' property was part of an oral agreement between Garney and Haynes, there would have been a heightened duty upon Garney to ensure that the property was secured against third-party thieves.

The existence of an oral agreement between Garney and Haynes is undisputed. The terms of that agreement may define the scope of Garney's duty in this case. To be entitled to summary judgment on the liability issue, Garney, as the mover, was required to resolve all factual issues as to the terms of that oral agreement. Garney failed to do so.

Summary judgment is seldom appropriate, where, as here, an oral agreement between the parties is the main issue and the evidence presented on the motion reflects a disagreement between the parties as to the terms of that oral agreement. See **Bilbo for Basnaw v. Shelter Ins. Co.**, 96-1476 (La. App. 1st Cir. 7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La. 11/21/97), 703 So.2d 1312 (a motion for summary judgment is rarely appropriate for disposing of a case requiring judicial determination of subjective facts such as the parties' intent). In this case, there are a myriad of factual issues to be resolved on Haynes' negligence claim, including whether Garney had a conventional relationship with Haynes, whether Garney agreed to secure its own equipment as well as Haynes' property in exchange for permission to access and occupy Haynes property, and if so, whether that duty encompassed the risk that thieves would access the property and use Garney's own equipment to carry out their criminal acts. In light of these unresolved factual issues, we conclude that the trial court erred in granting summary judgment in favor of Garney on the duty element of Haynes' liability claim. Moreover, the issue of Haynes' ability to prevail on the breach element of its liability claim was not raised in Garney's motion for summary judgment, and the trial court clearly erred in ruling, on the motion for summary judgment, that

18

Garney acted reasonably in this case. For these reasons, we reverse the summary judgment entered in favor of Garney.

*The Commission's motion for summary judgment*

The Commission supported its motion for summary judgment with a copy of Haynes' petition and the affidavit of G. Richard Speer, the director of the Department of Environmental Services for the City/Parish. Mr. Speer attested that the Commission is the owner of various sewer rehabilitation projects, including the Project at issue, and that the City/Parish contracted with Quest Acquisitions, LLC for servitude acquisitions. Mr. Speer reviewed all of the Project documents and found only Servitude Agreements, dated August 30, 2013 and June 13, 2014, executed between Haynes and the Commission or the City/Parish. He attested that there was no agreement between Haynes, the City/Parish, or the Commission other than these two agreements. He stated that he reviewed correspondence from Geoffrey Wilson and Robert Cane, Jr. to Mr. Haynes regarding negotiations for land access onto Mr. Haynes' property for the purpose of the Project, and that neither of these men were employees of the City/Parish during the Project.

Included in the documentation referenced in and submitted with Mr. Speer's affidavit is the August 15, 2013 agreement executed between Garney and the City/Parish for the Project and the City/Parish's bid documents for the Project. In a letter dated October 30, 2012, Mr. Cane of Quest Acquisitions sent Mr. Haynes a letter informing Mr. Haynes that the City/Parish had contracted with him to perform land acquisitions in connection with the Project. Mr. Cane made an offer to Mr. Haynes on behalf of the City/Parish for the purchase of two sewer servitudes and two temporary construction servitudes. Mr. Haynes responded to Mr. Cane's letter in a letter dated April 29, 2013. In the letter, Mr. Haynes indicated that the offer for the right-of-way and construction servitude across

19

certain parcels of property he owned was acceptable. Mr. Haynes stated that other matters must be addressed, including an additional sum cover the cost for relocation of two semi-trailers in the construction servitude. Additionally, Mr. Haynes stated that a 6-foot commercial grade chain link fence with bobbed wire and two double drive gates would be required to protect his moveable property during the Project and demanded that "No trespassing" signs be placed every 40-feet along the fence.

By letter dated June 18, 2013, Mr. Geoffrey L. Wilson responded to Mr. Haynes' April 29, 2013 letter and a subsequent on-site meeting on May 15, 2013. The letter informed Mr. Haynes that the Right-of-Way Committee accepted his request for additional funds to move and repair the semi-trailers in the construction servitude. However, the letter stated that it was the opinion of the Committee that no fence was necessary during the course of construction, that the contractor would be required to maintain the level of fencing/security that was currently in place, and that no further consideration would be given to Mr. Haynes' request.

In a Servitude Agreement dated October 30, 2013, COS granted sewer and temporary construction servitudes to the Commission for a certain time period in exchange for the sum of $26,624.00. In the agreement, COS agreed to hold the Commission harmless and indemnify it against any adverse claims and to release the Commission from liability, including any action for trespass, in the exercise of the rights granted to the Commission in the agreement. By agreement dated June 13, 2014, COS granted the Commission another temporary construction servitude in exchange for the sum of $6,853.00, containing identical provisions.

In further support of its motion, the Commission offered excerpts of the deposition testimony of Mr. Haynes and Mr. Densmore. Regarding his request for a 6-foot commercial grade fence, Mr. Haynes envisioned that the fence would be

erected between the right-of-way and the property on which his trailers were located. Mr. Haynes acknowledged that the City/Parish denied his request for the construction of this fence.

Mr. Densmore recalled discussing the topic of security with Mr. Wilson, to whom a verbal request was made to erect a temporary fence to secure Haynes' property during construction. Mr. Densmore acknowledged that the request had been denied. He also admitted that he did not have any discussions with Garney regarding a fence.

In support of its opposition to the Commission's motion for summary judgment, Haynes offered a copy of its petition and the deposition testimony of Mr. Haynes and Mr. Densmore. Mr. Haynes testified that he understood that his request for the construction of a temporary fence by the City/Parish had been denied. Mr. Haynes stated that the City/Parish had the opportunity to prevent the thefts from happening and insisted that he told the City/Parish on numerous occasions a theft would occur, referencing a couple of discussions with Mr. Wilson and about 10 discussions with Mr. Cane. The excerpt of Mr. Densmore's testimony discusses missing crushed concrete that had been located on a pile five to six hundred feet from his home.

Haynes argues that the Commission should be held liable for its own fault in allowing the theft of Haynes' property under the Louisiana Civil Code articles governing predial servitudes. Specifically, Haynes relies on La. Civ. Code art. 667, entitled "Limitations on use of property," which provides in pertinent part as follows:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of the damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for

21

damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Haynes argues that the Commission is liable to it for the theft of Haynes' property because it failed to take security measures that would have prevented the thefts. Haynes points to its requests during servitude negotiations with the Commission for a number of security measures to protect its property, including that the Commission employ a night watchman, post no trespassing signs, and install a fence, all of which were refused by the Commission. It also points to Mr. Haynes' testimony that the Commission was warned that Haynes' property would be stolen if security measures were not taken. Haynes asserts that summary judgment should be denied because there exists a genuine issue of material fact as to whether Hayne's communications and denied requests for security allow Haynes to recover damages for the theft of its property under La. C.C. art. 667. We disagree.

Although La. C.C. art. 667 uses the term "proprietor," it has been interpreted expansively by our courts to apply not only to a landowner, but to a person whose rights derive from a landowner. **Yokum v. 615 Bourbon Street, L.L.C**, 2007-1785 (La. 2/26/08), 977 So.2d 859, 874. Thus, it is possible that the Commission, as the holder of a servitude from Haynes, could qualify as a "proprietor." However, La. C.C. art. 667 establishes limitations on a proprietor's use of property in relation to his *neighbors*. The obligation of vicinage imposed by La. C.C. art. 667 is a legal servitude imposed on the owner of property or one deriving rights from the owner of the property to refrain conducting activities thereon that cause real damage to his neighbor. **Atkins v. Six C Properties, L.L.C**, 45,682 (La. App. 2nd Cir. 11/3/10), 55 So.3d 120, 126. Haynes is not a "neighbor" to whom the protections of La. C.C. art. 667 extend. Furthermore, we find nothing in the

22

language of La. C.C. art. 667 that would support imposing a duty on the holder of a servitude to protect the owner of the property subject to the servitude from third-party criminal activity. Thus, we conclude that La C.C. art. 667 does not impose a duty on the Commission to protect Haynes' property from the criminal acts of third persons.

Further, there have been no facts elicited in connection with the motion that could create genuine issues of material fact as to whether the Commission had a legal or conventional duty to protect Haynes from thefts occurring on Haynes' property. There is nothing in the language of either Servitude Agreement imposing an obligation on the Commission to secure the property from thieves. Importantly, the evidence on the motion established that when Mr. Haynes insisted that the Commission undertake security measures to protect the moveable property located on his property, the Commission refused. We also note that the Servitude Agreements contain express waivers for damages caused by trespass.

The evidence on the motion for summary judgment demonstrates that Haynes lacks evidence necessary to establish the existence of a legal or conventional duty on the part of the Commission to secure its property from the criminal acts of third persons. Accordingly, there is no genuine issue of material fact as to the Commission's liability for the thefts in this case, and the trial court correctly ruled that the Commission is entitled to summary judgment dismissing it from this litigation.

## CONCLUSION

For the foregoing reasons, the summary judgment rendered in favor of the East Baton Rouge Sewerage Commission is affirmed. The summary judgment rendered in favor of Garney Companies, Inc. is hereby reversed. The case is remanded to the trial court for proceedings consistent with this appeal. Costs of

23

this appeal are assessed one-half to plaintiffs and one-half to Garney Companies, Inc.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED.**